[Cite as *State v. Caulfield*, 2013-Ohio-3029.]


IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY


STATE OF OHIO

　　　　Plaintiff-Appellant

v.

MICHELLE CAULFIELD


　　　　Defendant-Appellee



Appellate Case No.　　25573

Trial Court Case No.　2012-CR-1684

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of July, 2013.

. . . . . . . . . . .


MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
　　　　Attorney for Plaintiff-Appellant

VICTOR A. HODGE, Atty. Reg. No. 0007298, Assistant Public Defender, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
　　　　Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, the State of Ohio, appeals from the trial court's decision granting a motion to suppress evidence filed by Defendant-Appellee, Michelle Caulfield. The evidence at issue was discovered as a result of a deputy searching Caulfield's purse while she was a passenger in a vehicle stopped for a traffic violation. The driver of the vehicle was subsequently arrested due to an outstanding warrant.

{¶ 2} The State contends that the evidence obtained as a result of searching Caulfield's purse should not have been suppressed because the search and seizure of the purse was reasonable for officer safety. The State also contends that the search was conducted pursuant to Caulfield's consent.

{¶ 3} In response, Caulfield claims that the evidence was correctly suppressed because the deputy illegally detained her after the driver's arrest. Caulfield also claims that the deputy did not have credible grounds to search her purse.

{¶ 4} We conclude that Caulfield's detention was lawful, but that the suppression decision must still be sustained. The trial court's findings indicate that Caulfield did not consent to have her purse searched by the deputy, and the record indicates that: (1) the deputy did not have reasonable grounds to believe that there was contraband in the vehicle relating to the arrest; (2) the arrested driver was not within the vicinity of the vehicle at the time of the search justifying a search incident to arrest; (3) there is no evidence that any contraband was discovered in the vehicle prior to the search of Caulfield's purse; and (4) the driver's consent to search the vehicle did not extend to Caulfield's purse. Under these circumstances, the search of

Caulfield's purse was unreasonable and in violation of her Fourth Amendment rights.

### I. Facts and Course of Proceedings

{¶ 5}     At 1:40 a.m. on January 20, 2012, Michelle Caulfield was riding as a front-seat passenger in a vehicle traveling on Far Hills Avenue in Centerville, Ohio.  Deputy Lawrence Tyree of the Montgomery County Sheriff's Department observed that the license plate of the vehicle carrying Caulfield was completely obstructed by snow.  As a result, Tyree initiated a traffic stop for purposes of issuing a citation.  During the traffic stop, Tyree obtained identification from the driver and Caulfield, and ran their information through the LEADS system.  The system indicated that the driver was under suspension, that he had a prior drug suspension, and that a warrant had been issued for his arrest.  No information was returned on Caulfield.

{¶ 6}     Upon learning that the driver had an active warrant, Tyree called for a back-up officer to assist him.  Deputy Matthew Wright of the Montgomery County Sheriff's Office arrived on the scene a few minutes later.  Tyree then arrested the driver pursuant to the warrant, and the driver   gave consent for the deputies to search his vehicle.  Tyree took the driver to his police cruiser while Wright approached Caulfield, who was sitting in the front-passenger seat. Wright asked Caulfield to exit the vehicle so that he could conduct a search.  The trial court found that Caulfield attempted to take her purse with her as she exited the vehicle, but Wright ordered her to leave it in the vehicle.   Wright also ordered Caulfield to stand in front of the vehicle.

{¶ 7}     Wright testified that he had no reason to believe that Caulfield had committed a

crime, but that he detained her as a "necessary corollary of a traffic stop." Transcript, p. 42, ln. 10-12. After Caulfield left her purse and exited the vehicle, Wright searched Caulfield's purse while Tyree simultaneously searched the interior of the vehicle. The deputies did not conduct a protective pat down search on Caulfield. Wright claimed that Caulfield gave him consent to search her purse. Caulfield claimed that she never consented to the search of her purse, and the trial court accepted her testimony.

{¶ 8} Tyree discovered unidentified pills in the tray of the center console of the vehicle. The pills were later identified as vitamins. Wright discovered unknown pills, syringes, marihuana, two scales, and various plastic baggies in Caulfield's purse. Wright arrested Caulfield, and asked her if she was carrying anything else. Caulfield responded by disclosing that she had drugs and drug paraphernalia in her bra. Tyree then noticed a plastic bag sticking out of the top of Caulfield's shirt and removed it. Tyree suspected that the substance in the plastic bag was crystal meth. Tyree contacted the Centerville Police Department to request that a female officer be dispatched to conduct a pat-down on Caulfield. Once the female officer arrived, a pat-down was conducted, and a black pouch was discovered in Caulfield's bra. The pouch contained a substance later identified as crystal meth.

{¶ 9} On July 27, 2012, Caulfield was indicted on two counts of Aggravated Possession of Drugs (Schedule I or II), one count of Possession of Marihuana, one count of Possession of Drugs (Schedule III, IV, or V), and one count of Possession of Drug Paraphernalia. On August 22, 2012, Caulfield filed a motion to suppress the evidence obtained from her purse and undergarments on grounds that it was obtained pursuant to an unlawful search and seizure.

{¶ 10} The trial court granted the motion to suppress. The trial court concluded that

Caulfield was illegally seized because there were no articulable facts giving rise to a suspicion of illegal activity that justified extending Caulfield's detention after the driver was arrested. Additionally, the trial court concluded that even if Caulfield was not illegally seized, the search of her purse was illegal because the State presented insufficient evidence to warrant the application of the officer safety exception to the warrant requirement. The State appeals the trial court's ruling on the motion to suppress.

## II. Did the Trial Court Err in Granting Caulfield's Motion to Suppress?

{¶ 11}  The State's sole assignment of error states that:

> The Trial Court Erred by Granting Michelle Caulfield's Motion to Suppress the Drug and Drug Paraphernalia Evidence Where it Was Objectively Reasonable for the Officer to Order Caulfield to Leave Her Purse in the Vehicle He Intended to Search, and Caulfield Consented to the Search of Her Purse.

{¶ 12}  Under this assignment of error, the State argues that the evidence discovered should not have been suppressed because it was lawfully obtained. Specifically, the State claims that Wright acted reasonably when he ordered Caulfield to leave her purse in the vehicle, and that Caulfield consented to Wright searching the purse.

{¶ 13}  Caulfield argues that the trial court correctly suppressed the evidence because Wright lacked a reasonable suspicion of criminal activity to justify continuing her detainment after the driver's arrest. Caulfield also argues that Wright lacked credible grounds to search her purse, and that she was subject to an illegal search and seizure.

{¶ 14}  The overall issue in this case is whether Caulfield's interaction with Wright

resulted in an illegal search and seizure that requires suppression of the evidence. Specifically, we must decide whether the facts determined by the trial court establish: (1) an illegal seizure of Caulfield as a result of her continued detainment; and /or (2) an illegal search and seizure of Caulfield's purse. We will analyze each sub-issue separately.

{¶ 15} As a preliminary matter, we note that in ruling on motions to suppress, "the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay*, 34 Ohio St.2d 250, 298 N.E.2d 137 (1972). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

A. Was Caulfield Illegally Seized As a Result of Her Continued

Detainment After the Driver's Arrest?

{¶ 16} "When a lawfully stopped vehicle contains passengers, the Fourth Amendment permits law enforcement officers to detain those passengers for the duration of the lawful detention of the driver." *State v. Brown*, 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, ¶ 14, citing *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

{¶ 17} In *State v. Williams*, 2d Dist. Montgomery No. 22924, 2009-Ohio-1627, a driver was pulled over due to a passenger littering, and was detained beyond the initial reason for the stop due to the passenger being arrested for an outstanding warrant. *Id*. at ¶ 3-5. The driver

was not suspected of any criminal activity, but the officer advised the driver that he was going to conduct a search of the driver's vehicle incident to the passenger's arrest. *Id.* at ¶ 5. As a result of the search, the officer discovered that the driver was carrying concealed weapons inside the passenger compartment. *Id.* at ¶ 6. We stated the following regarding the driver's continued detainment after the passenger's arrest:

> Much like a passenger can be detained by the police for the duration of a lawful stop of the driver, *State v. Strozier*, 172 Ohio App.3d 780, 876 N.E.2d 1304, 2007-Ohio-4575, we believe the driver may be detained for the period of time reasonably necessary for the officer to complete its investigation of a passenger. A search incident to the arrest of the passenger must be " 'contemporaneous' with the arrest, occurring at or very near the time of the arrest." *Murrell*, 94 Ohio St.3d at 495, 764 N.E.2d 986. Accordingly, the length of the driver's continued detention while the search incident to an arrest occurs would be minimal. Considering that the purpose of the search is to protect the officers from weapons that the arrestee may have in the vehicle and to prevent the destruction of evidence, the continued detention of the driver during this "contemporaneous" search is not unreasonable. *Williams* at ¶ 32.

{¶ 18} The facts of *Williams* are similar to the facts of the present case, with the exception that, in *Williams*, the driver was detained incident to the passenger's arrest as opposed to the passenger being detained incident to the driver's arrest. Additionally, the search of the vehicle in the present case was lawfully conducted based on the driver's consent, not as a lawful search incident to arrest. However, these distinctions do not prevent us from applying the

principle set forth in *Williams*. Just like the driver in *Williams*, Caulfield's ability to continue her means of travel was interrupted, and she was detained as a result of the driver's arrest and the lawful search of the vehicle.

**{¶ 19}** *Williams* provides that the continued detention of the driver during a lawful search is not unreasonable if it is contemporaneous with the arrest. Furthermore, "[t]he temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." (Citation omitted.) *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). In this case, the search of the vehicle was conducted contemporaneously with the driver's arrest and the search was lawful pursuant to the driver's consent. The stop had not ended after the driver's arrest because the police had to continue to control the scene for purposes of searching the vehicle. Caulfield was detained incident to the lawful search of the vehicle. Accordingly, Caulfield's detention was reasonable and not illegal.

### B. Was the Search and Seizure of Caulfield's Purse Lawful?

**{¶ 20}** Under the Fourth Amendment of the United States Constitution, a warrant based on probable cause is required to effectuate a lawful search and seizure unless one of the recognized exceptions applies. *State v. Holloway*, 2d Dist. Clark No. 04CA0070, 2006–Ohio–4797, ¶ 15–16, citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Valid consent to search is one of the recognized exceptions to the warrant requirement. *State v. Moon*, 2d Dist. Montgomery No. 9288, 1986 WL 2368, *1 (Feb. 14, 1986),

citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Barker*, 53 Ohio St.2d 135, 372 N.E.2d 1324 (1978). A search incident to a lawful custodial arrest is another exception to the warrant requirement that is at issue in this case since the driver was arrested prior to the search of the vehicle and Caulfield's purse. *State v. Myers,* 119 Ohio App.3d 376, 380, 695 N.E.2d 327 (2d Dist. 1997), citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). We will determine whether: (1) the driver's consent to search the vehicle validates the warrantless search of Caulfield's purse; (2) the search was reasonable for officer safety; and (3) the purse was lawfully searched incident to the driver's arrest.

### 1. Consent

**{¶ 21}** For a warrantless search to be valid based on consent, "[t]he State is required to establish, by clear and convincing evidence, that consent to the search was freely and voluntarily given." (Citations omitted.) *State v. Powell*, 2d Dist. Champaign No. 2012 CA 14, 2012-Ohio-5104, ¶ 17.

**{¶ 22}** In this case, there is contradictory testimony concerning whether Caulfield consented to the search of her purse. While the trial court's decision did not directly address Caulfield's consent in its findings of fact, the court indicated that it found Caulfield to be credible. The court also concluded that an illegal search occurred. This conclusion necessarily implies the corollary finding that Caulfield did not consent to the search. Because the trial court is in the best position to resolve questions of fact and evaluate the credibility of witnesses, *Retherford*, 93 Ohio App.3d at 592, 639 N.E.2d 498, we must accept the trial court's finding that

Caulfield did not consent to the search of her purse.

{¶ 23} It is not disputed that the deputies obtained valid consent from the driver to search the vehicle which contained Caulfield's purse. However, the driver's consent to search the vehicle does not extend to Caulfield's purse. Proper consent can be given by a third party, but the third-party must possess "common authority over the area sought to be searched." *State v. Miller,* 117 Ohio App.3d 750, 759, 691 N.E.2d 703 (11th Dist. 1997)*, citing United States v. Matlock*, 415 U.S. 164, 172, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). (Other citation omitted.) "Common authority rests 'on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.' " *State v. Pugh*, 2d Dist. Montgomery No. 25223, 2013-Ohio-1238, ¶ 9, citing *Matlock* at 172, fn. 7. "[T]he United States Supreme Court has applied a 'reasonable belief' standard for determining whether a police officer's reliance upon the consent of a third party was proper under particular circumstances." *Miller* at 759. "That is, before a trial court can conclude that a warrantless search was valid on the basis of a third-party consent, it must find that the facts of the case supported a reasonable belief on the part of the police officer that the third party had the authority to consent to the search." *Id.* at 759-760.

{¶ 24} In this case, there is nothing in the record establishing that the driver had mutual use or joint access to Caulfield's purse. Furthermore, there is nothing in the record indicating that the officer had a reason to believe that the driver had authority to consent to the search of Caulfield's purse. Accordingly, there was no common authority over the purse, and the driver's

consent to search the vehicle does not extend to Caulfield's purse.

{¶ 25}   For the foregoing reasons, consent does not validate the warrantless search of Caulfield's purse.

2. Search Incident to Arrest

{¶ 26}   The search incident to arrest exception to the warrant requirement "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations."  *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct.1710, 173 L.Ed.2d 485 (2009), citing *United States v. Robinson,* 414 U.S. 218, 230-234, 94 S.Ct. 467, 38 L.Ed.2d  427 (1973); *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

{¶ 27}   The United States Supreme Court defined the scope of a search incident to arrest in *Chimel* and stated that an officer making a lawful custodial arrest may search "the arrestee's person and the area 'within his immediate control'-construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."  *Chimel* at 763.   Later, in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court explained that once a police officer "has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."   (Footnote omitted.)   *Id*. at 460.   This includes   "the contents of any containers found within the passenger compartment * * *."   *Id.* at 461.

{¶ 28}  The United States Supreme Court's decision in *Gant* revisited *Belton,* and narrowed the scope of a lawful search incident to arrest. *Gant* held that "[p]olice may search a

vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351.

{¶ 29}  In *People v. Frias*, 393 Ill.App.3d 331, 912 N.E.2d 1236 (2009), a driver was stopped for speeding, and the officer on duty discovered that the driver had a suspended license and an outstanding arrest warrant. *Id*. at 333.   The officer arrested the driver and placed him in the back of the squad car.    *Id.*   The officer then gestured for the passenger to exit the vehicle. *Id*. at 333-334.   As the passenger exited the vehicle, she moved her purse from her lap to her shoulder. *Id.*   The officer claimed that the passenger placed the purse on the trunk, and that the officer searched the purse after finding nothing in the car's passenger compartment.   *Id.* at 334. The passenger did not consent to the search.   *Id*.   Based on the standard established in *Gant*, the court in *Frias* held that "the searches conducted in this case purportedly as incident to defendant's arrest were improper for violating the [F]ourth [A]mendment."   *Id.* at 336-337.

{¶ 30}  We applied *Gant* the same way in *State v. Gilbert*, 184 Ohio App.3d 642, 2009-Ohio-5528, 921 N.E.2d 1126 (2d Dist.).   In *Gilbert*, the defendant was a passenger in a vehicle stopped for a traffic violation.   *Id*. at ¶ 5.   The officer on duty discovered that the driver had a suspended license and arrested her.   *Id.*   Another passenger in the vehicle had an outstanding warrant for robbery, and was arrested as well.   *Id*.   The defendant did not have any outstanding warrants, and was removed from the vehicle so that the officers could conduct a search of the vehicle incident to the arrests.   *Id*. at ¶ 6.   During the search, the officers found marijuana seeds in the console.   *Id*. at ¶ 7.   After conducting a canine search, and searching the defendant's person for illegal substances, the officer found marijuana and crack cocaine in the

defendant's shoes. *Id* at ¶ 9. Under the standard established in *Gant*, we held that the police were not justified in conducting a warrantless search of the vehicle in which the defendant was a passenger because:

> [A]t the time of the search, no occupant had access to, or was within reaching distance of, the vehicle's passenger compartment. There is also no indication that the search was initiated to discover evidence relevant either to the crime that had been committed by the driver or the crime for which there was an outstanding warrant to arrest the front-seat passenger. The driver of the car had been arrested for driving under suspension, and the car would have contained no evidence relevant to that crime. A passenger in the front seat had also been arrested on an outstanding warrant for robbery, but there is no indication that the officers were searching for evidence relevant to that crime or that evidence was likely to be present relevant to that crime, which would have occurred sometime in the past, since a warrant had been issued. *Id*. at ¶ 33.

{¶ 31} The present case is similar to *Frias* and *Gilbert*. Here, the driver was stopped for a minor traffic violation, and was subsequently arrested due to an outstanding warrant and for driving under suspension. The driver had no access to the passenger compartment during the search of the vehicle because he was arrested and placed in the back of Deputy Tyree's cruiser. Caulfield also did not have access to the passenger compartment, as she was ordered to stand at the front of the vehicle.

{¶ 32} Other than the traffic violation, there was no criminal activity observed, and there was no contraband discovered prior to the search of the vehicle. Deputy Wright indicated that

the warrant for the driver listed drug and weapon indicators. The trial court did not accept this testimony because Tyree, the officer who discovered the warrant, did not mention any such indicators.

{¶ 33} The court measures reasonableness of an officer's actions by reviewing the "totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *State v. Bobo*, 37 Ohio St.3d 177, 179, 524 N.E.2d 489 (1988). In this case, the totality of the circumstances would not cause an officer to reasonably believe that the vehicle contained evidence of criminal activity.

{¶ 34} For the foregoing reasons, the search incident to arrest exception to the warrant requirement does not apply to the vehicle in this case, and cannot be used to justify the search of Caulfield's purse.

{¶ 35} Even if the search incident to arrest exception had applied, the search of Caulfield's purse would still be unlawful, since the trial court found that the officer ordered Caulfield to leave her purse in the vehicle without having probable cause to believe that there was contraband in the vehicle. Courts in other jurisdictions have held that an officer, without probable cause to believe there is contraband in a vehicle, violates a passenger's Fourth Amendment rights when the officer orders the passenger to leave her purse in the vehicle, and then subsequently searches the purse along with the vehicle. *See State v. Boyd*, 275 Kan. 271, 282, 64 P.3d 419 (2003); *State v. Newsom*, 132 Idaho 698, 700, 979 P.2d 100 (1998); *State v. Tognotti*, 2003 ND 99, 663 N.W.2d 642, ¶ 21. In other words, " 'the police cannot create a right to search a container by placing it within the passenger compartment of a car or by ordering someone else to place it there for them.' " *Tognotti* at ¶ 19, quoting *State v. Holland*, 135 Idaho

159, 163, 15 P.3d 1167 (2000).

{¶ 36}   In *Boyd*, a passenger did not consent to the search of her purse and was ordered to leave her purse in the vehicle during a search of the vehicle based on the driver's consent. *Boyd* at 272-273.   At the time the officer ordered the passenger to leave her purse in the vehicle, he did not have probable cause to believe that the vehicle or the purse contained contraband.   *Id*. at 283.    Upon searching the vehicle, the officer discovered a crack pipe in the console of the vehicle.   *Id*. at 272.   Given the discovery of the crack pipe, the officer proceeded to search the passenger's purse.   *Id.* at 273.

{¶ 37}   The Supreme Court of Kansas determined in *Boyd* "that where a passenger is told by a police officer to get out of a lawfully stopped vehicle and in response to the officer's order to leave her purse in the vehicle, puts the purse down and exits the vehicle, a subsequent search of the purse as part of a search of the vehicle violates the passenger's Fourth Amendment right against unreasonable search and seizure."   *Id*. at 283; *See also Newsom*, 132 Idaho at 700, 979 P.2d 100; *Tognotti*, 2003 ND 99, 663 N.W.2d 642, at ¶ 21.

{¶ 38}   Like the officers in *Boyd*, Deputy Wright did not have probable cause to believe there was contraband in the vehicle when he ordered Caulfield to leave her purse. Consequently, even if the search incident to arrest exception applied in this case, per *Boyd*, the search of Caulfield's purse would still have been unlawful.

### 3. Officer Safety

{¶ 39}   The trial court found that the search of the purse cannot be justified based on officer safety, as the totality of the circumstances indicate that the deputies had no reason to believe that the driver or Caulfield had a weapon.   The trial court noted that the deputies chose

not to pat Caulfield down, despite the fact that she was wearing a large, winter coat that could easily conceal a weapon, and found it unlikely that the Deputy would be concerned with a weapon in Caulfield's purse, but would not be concerned with weapons in her coat.

{¶ 40} While Caulfield was not illegally detained, the search of her purse was unlawful. Because the warrantless search of Caulfield's purse does not fall under any of the relevant, recognized exceptions to the warrant requirement, the search and seizure of Caulfield's purse was unreasonable and in violation of Caulfield's Fourth Amendment rights. Accordingly, all of the evidence obtained as a result of the search is subject to suppression under the fruit of the poisonous tree doctrine. *State v. McLemore*, 197 Ohio App.3d 726, 2012-Ohio-521, 968 N.E.2d 612, ¶ 20 (2d Dist.).

{¶ 41} The State's sole assignment of error is overruled.

### III. Conclusion

{¶ 42} Having overruled the State's sole assignment of error, we hereby affirm the trial court's decision granting Michelle Caulfield's motion to suppress evidence.

. . . . . . . . . . . .

FAIN, P.J. and DONOVAN, J., concur.


Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Victor A. Hodge
Hon. John P. Petzold
(sitting for Judge Steven K. Dankof)