[Cite as *State v. Haynes*, 2018-Ohio-607.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                          :
                                   :
    Plaintiff-Appellee         :    Appellate Case No. 27538
                                   :
v.                                     :    Trial Court Case No. 16-CR-2202
                                   :
DARRELL L. HAYNES                      :    (Criminal Appeal from
                                   :     Common Pleas Court)
    Defendant-Appellant        :
                                   :

. . . . . . . . . .

O P I N I O N

Rendered on the 16th day of February, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

JULIUS L. CARTER, Atty. Reg. No. 0084170, 130 West Second Street, Suite 1622, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Darrell L. Haynes appeals from his conviction and sentence on one count of improperly handling a firearm in a motor vehicle, a fourth-degree felony. Haynes pled no-contest to the charge and was found guilty after the trial court overruled his suppression motion.

{¶ 2} In his sole assignment of error, Haynes challenges the trial court's denial of the suppression motion.

{¶ 3} The sole witness at Haynes' suppression hearing was Devin Maloney, a K-9 patrol officer with the Kettering police department. Maloney testified that he was on patrol with his dog on the night of July 9, 2016 when he conducted a random license-plate check of a passing vehicle. His computer alerted him that the registered owner of the vehicle, Keishaun Tims, had a warrant for her arrest. Maloney made a U-turn but failed to catch the other vehicle. He looked at the address associated with the warrant, however, and realized that it was just round the corner at an apartment complex. Maloney proceeded directly to that location. Upon arriving, he saw the subject vehicle parked in front of Tims' apartment. Maloney stopped his cruiser behind the vehicle, which still was running and had its headlights and brake lights on. He shined his spotlight on the vehicle and observed that the female driver matched the physical description of the registered owner of the vehicle. He then approached the vehicle and made contact with Tims, the driver, and Haynes, the front-seat passenger and only other occupant. Maloney obtained identification from Haynes and Tims. Haynes appeared to be particularly nervous, but Maloney had no reason to suspect him of anything criminal. Due to Tims' warrant, Maloney requested a second police unit, which arrived within minutes.

{¶ 4} When the second police unit arrived, the warrant was confirmed with the dispatcher. Tims was removed from her car, handcuffed, and placed in the back of a police cruiser. Police proceeded to talk to Tims about searching her car, but she refused to consent. At that point, Haynes was asked to step away from Tims' car and to wait with an officer. He complied and also consented to a weapons pat-down, but no weapons were found on his person. Haynes then stood behind Tims' car while Maloney deployed his K-9 dog in a free-air sniff.

{¶ 5} Maloney's dog alerted to the driver's side door area of Tims' car. Maloney asked Tims and Haynes whether there was anything illegal or dangerous in the car. After they responded negatively, he proceeded to search the car. The search resulted in police discovering marijuana shake on the floorboard and a marijuana blunt in the ashtray. Maloney also found a loaded handgun behind the passenger's seat. A magazine also was found in the car. Upon discovering the firearm, police handcuffed Haynes. As they were doing so, Haynes asked why he was being handcuffed. Maloney responded, "There's a gun in the car, alright?" Another officer added, "Just until we figure out who's [sic] gun and what's going on." Maloney then stated, "We got to figure out whose it is." Haynes immediately admitted that he owned the gun.

{¶ 6} In its suppression ruling, the trial court found that Haynes reasonably believed he was not free to leave the scene after police obtained his driver's license and retained it. (Doc. # 33 at 3). The trial court also found that Haynes was not handcuffed for officer safety after police discovered the loaded handgun because he already had been patted down and the firearm found in Tims' car already had been secured. (*Id.*). Although Haynes also was not *Mirandized* before he admitted owning the gun, the trial court

nevertheless found no basis for suppression. It reasoned that his confession was a spontaneous utterance not in response to police interrogation. (*Id.* at 6). Therefore, the trial court declined to suppress the confession. It also declined to suppress the gun and the magazine, ruling that they were discovered during a lawful search based on the dog's alert. (*Id.*).

{¶ 7} On appeal, Haynes raises three issues. First, he contends the trial court's "most notable factual error" was referring to the incident as a "traffic stop." (Appellant's brief at 10). He also contends the trial court erred in finding that the magazine was discovered in the glove box. (*Id.*). Second, he asserts that no basis existed for detaining him because the incident was not a traffic stop and because police lacked any basis for an investigative detention with regard to him. (*Id.* at 10-11). Third, he argues that his un-*Mirandized* statement about owning the gun was not spontaneous. Rather, he contends he made the statement in response to words and actions by the officers that were reasonably likely to elicit an incriminating response.

{¶ 8} When ruling on a motion to suppress, " 'the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). We must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, we then must determine as a matter of law, without deference to the trial court's legal conclusion, whether the

applicable legal standard is satisfied. *Id.*

{¶ 9} With the foregoing standards in mind, we see no error in the trial court's ruling. As a threshold matter, we note that the trial court did not err in declining to suppress the gun or the magazine discovered during the search of Tims' car. Following her arrest on the outstanding warrant, her car remained parked in front of her apartment. At that point, nothing prevented Maloney from walking his dog around her car, or any other car, in the lot. This is so because a free-air sniff by a dog is not a "search" under the Fourth Amendment.[1] *State v. McCray*, 2d Dist. Montgomery No. 26519, 2015-Ohio-3049, ¶ 17. Once the dog alerted on the car, Maloney had probable cause to search it. *Id.* Therefore, the trial court properly refused to suppress the gun or the magazine.

{¶ 10} With regard to Haynes' specific arguments, we see no basis for reversal predicated on the trial court referring to the incident as a "traffic stop." As set forth above, Maloney first observed Tims' car when it passed him heading the opposite direction on the road. He checked the car's license plate and determined that the registered owner, Tims, had an outstanding warrant. Maloney made a U-turn and pursued the car to a parking lot in front of Tims' apartment. The vehicle was stationary when Maloney reached it, but its engine was running, its lights were on, and Tims was in the driver's seat. We see no meaningful difference between this situation and an officer conducting a "traffic stop" by pulling behind a car that was already stopped at a gas station based on the officer determining that the car's registration had expired. *See State v. Henderson*, 2d Dist.

---

[1] In his reply brief, Haynes cites case law for the proposition that police have no basis for searching a legally-parked car for officer safety after removing and/or arresting the occupants. (Appellant's reply brief at 2-3). As set forth above, however, the dog's free-air sniff here was not a "search." And the result of the dog's sniff provided probable cause to search the vehicle.

Montgomery No. 26018, 2014-Ohio-4601. Because Maloney observed no traffic violation, his encounter in this case arguably might be characterized as an "investigatory stop" rather than a "traffic stop." But we see no conceivable prejudice in characterizing his encounter as a traffic stop, which is simply one type of investigative stop. It is beyond dispute that a police officer may detain a motorist when he has a reasonable, articulable suspicion that the motorist has committed *any* criminal offense, including a traffic offense, and no other independent reasonable and articulable suspicion is required. *State v. Chase*, 2d Dist. Montgomery No. 25323, 2013-Ohio-2347, ¶ 17. Here the information Maloney received about an active warrant gave him reasonable, articulable suspicion to believe that Tims had committed a criminal offense. Therefore, Maloney was entitled to "stop," "seize," or "detain" Tims to pursue the warrant issue further. Haynes' other argument about the location of the magazine within Tims' car is immaterial. For purposes of our analysis, Haynes has failed to explain what difference it makes whether the magazine was found in the glove box, as the trial court found, or in the same bag with the gun, as he suggests on appeal.

{¶ 11} Haynes next challenges his detention at the scene, arguing that he merely was sitting in a car with someone who had a warrant and that he did nothing indicative of criminal activity. Although Maloney testified that Haynes appeared nervous, Haynes insists that there were no additional facts to justify an investigative detention of him. He also notes that his identification was not returned prior to police searching Tims' car.

{¶ 12} Upon review, we see no illegality in Haynes' detention at the scene. "When a lawfully stopped vehicle contains passengers, the Fourth Amendment permits law enforcement officers to detain those passengers for the duration of the lawful detention

of the driver." *State v. Lawson*, 180 Ohio App. 3d 516, 2009-Ohio-62, 906 N.E.2d 443, ¶ 39 (2d Dist.), quoting *State v. Brown*, 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, ¶ 14. Such detention " 'may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable.' " *Id.*, quoting *Brown*, citing *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984). A police officer also may request and obtain identification from a passenger. *State v. Wilcox*, 2d Dist. Clark No. 2011 CA 99, 2012-Ohio-3400, ¶ 16. In addition, "[d]uring an investigative stop of a vehicle, the police officer making the stop may order a passenger to get out of the vehicle pending completion of the stop." *State v. Choice*, 2d Dist. Montgomery No. 25131, 2013-Ohio-2013, ¶ 48. Maloney's detention of Haynes was lawful while he completed his investigation of Tims by confirming her identify and the validity of her warrant and arresting her. *See also State v. Starks*, 9th Dist. Summit No. 27347, 2015-Ohio-2137, ¶ 12 ("Though Starks argues that he should have been free to leave while the officers were processing the arrest of the driver, the continued detention of a passenger is not unreasonable when it is contemporaneous with the arrest of the driver.").

{¶ 13} We note too that Maloney deployed his dog, which already was on the scene, less than two minutes after Tims' arrest and her denial of consent to search her car. In *State v. Caulfield*, 2013-Ohio-3029, 995 N.E.2d 941 (2d Dist.), this court held that a passenger's continued detention was permissible where a vehicle search "was conducted contemporaneously with the driver's arrest and the search was lawful pursuant to the driver's consent." *Id.* at ¶ 19. *Caulfield* cited case law defining "contemporaneously" to mean "at or very near the time of the arrest." *Id.* at ¶ 17. Here, of course, Tims did not

consent to a search of her car. As explained above, however, the dog's free-air sniff was lawful because it was not a search under the Fourth Amendment. In addition, Haynes' continued detention during the free-air sniff was lawful because the sniff occurred contemporaneously with Tims' arrest. The trial court determined that "after ordering [Haynes] out of the car, Officer Maloney promptly deployed the canine to perform an open air sniff around the car." (Doc. #33 at 2). Once the dog alerted, police had probable cause to search the car. *State v. Greene*, 2d Dist. Montgomery No. 25577, 2013-Ohio-4516, ¶ 17. The dog's alert also provided grounds for them to continue to detain Haynes pending completion of the search, which resulted in the discovery of a loaded handgun and in his admission that he owned the weapon. Furthermore the facts of this case reveal Haynes was independently remaining at the scene because Tims was asking him to retrieve her possessions from the vehicle. For the foregoing reasons, we conclude that Haynes was not unlawfully detained prior to his incriminating statement.

{¶ 14} Haynes' final argument is that his admission about the gun should have been suppressed because it was the product of custodial interrogation without *Miranda* warnings.[2] Although the police officers did not ask him a question prior to his admission, Haynes contends their responses to his question about being handcuffed were reasonably likely to elicit an incriminating statement from him.

---

[2] Haynes also contends "[i]t is important to note that the officers continued to question" him for a substantial period of time before finally advising him of his *Miranda* rights just before transporting him to the police station. (Appellant's brief at 12). At the outset of the suppression hearing, however, the State conceded that all additional statements Haynes made after admitting ownership of the gun and prior to being advised of his *Miranda* rights were subject to suppression and would not be used against him. (Suppression Tr. at 4). Therefore, the only relevant statement on appeal is Haynes' admission that the gun was his.

**{¶ 15}** In its suppression ruling, the trial court rejected Haynes' argument. It recognized that he was not free to leave when he made the admission and that he had not been *Mirandized*. Nevertheless, the trial court found no "interrogation" and, therefore, no basis for suppression because Haynes "spontaneously blurted out that the weapon was his." (Doc. #33 at 6). The trial court also reasoned that "the Officers were merely answering Defendant's question as to why he was being handcuffed upon discovery of the gun—conduct normally incidental to arrest." (*Id.*).

**{¶ 16}** We note that " '[i]nterrogation' includes express questioning as well as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 20 (2d Dist.), quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "Interrogation" must reflect "a measure of compulsion above and beyond that inherent in custody itself." *Innis* at 300. "Police officers are not responsible for unforeseeable incriminating responses." *State v. Waggoner*, 2d Dist. Montgomery No. 21245, 2006-Ohio-844, ¶ 14; *Strozier* at ¶ 20. "A suspect who volunteers information, and who is not even asked any questions, is not subject to a custodial interrogation and is not entitled to *Miranda* warnings." *State v. Fair*, 2d Dist. Montgomery No. 24120, 2011-Ohio-3330, ¶ 39, citing *State v. McGuire*, 80 Ohio St.3d 390, 401, 686 N.E.2d 1112 (1997).

**{¶ 17}** In the present case, the trial court made the following findings regarding Haynes' interaction with the police officers just before his incriminating statement:

> When Defendant asked why he was being handcuffed, Off. Maloney

responded, "There's a gun in the car, alright?" Off. Lambert said, "Just until we figure out who's gun and what's going on." And Off. Maloney followed with, "We got to figure out whose it is." Then Defendant spontaneously admitted that he owned the gun. This spontaneous admission was not in response to any questioning from the Officers. * * *

(Doc. #33 at 3).

{¶ 18} Having reviewed a recording of the interaction between Haynes and the officers, we see no error in the trial court's ruling. We are not convinced that Haynes' admission was "spontaneous" given that it came in response to the officers' response to the officer's statement. We do agree with the trial court, however, that Haynes' admission was not the product of interrogation. The admission was not in response to any express questioning. It also was not in response to any words or actions, other than those normally attendant to custody, that the police should have known were reasonably likely to elicit an incriminating response from Haynes.

{¶ 19} When Haynes inquired about the reason for him being handcuffed, Maloney advised him that a gun had been found in the car. Informing a suspect of the reason for his detention is a statement normally attendant to custody, particularly when the suspect prompts the statement. *State v. Leavitt*, 11th Dist. Lake No. 92-L-197, 1994 WL 102391, *2 (Mar. 25, 1994); *Columbus v. Stepp*, 10th Dist. Franklin Nos. 92AP-486, 92AP-487, 1992 WL 281229, *4 (Oct. 6, 1992). Virtually simultaneously with handcuffing Haynes and telling him a gun had been found in the car, the officers added that they just needed to figure out what was going on and whose gun it was. Haynes immediately admitted the

gun was his, claiming it was "no big deal."[3] The officers' statements about figuring out what was going on and determining whose gun was involved were a continuation of the officers' explanation for why they were handcuffing Haynes. The statements appear to have been expected to help keep Haynes calm and to minimize any anxiety about being handcuffed and detained, not to create a measure of compulsion for him to incriminate himself. We agree with the trial court's assessment that Haynes' admission was not the product of police "interrogation." Thus, the absence of *Miranda* warnings did not require suppression of the admission.

{¶ 20} Based on the reasoning set forth above, we overrule Haynes' assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.

. . . . . . . . . . . . .

TUCKER, J., concurs.

FROELICH, J., dissenting:

{¶ 21} I agree with the majority that the officers lawfully found the gun in Tims's vehicle and that the trial court did not err in denying the motion to suppress the weapon. However, I disagree that Haynes's detention was not extended beyond the time required to complete the stop of Tims. I would hold that Haynes's statements were in response to comments by the police that would reasonably elicit an incriminating response while he was unlawfully detained and that those statements should have been suppressed.

{¶ 22} The report of an active warrant provided reasonable suspicion to justify Officer Maloney's pulling up behind Tims's vehicle, verifying Tims's identity, and

---

[3] Haynes' exchange with the officers occurs at approximately 01:10:15 on the cruiser camera recording, which is State's Exhibit 1 to the suppression hearing.

confirming the warrant for her arrest. The officers were entitled to conduct a dog sniff of Tims's vehicle without infringing upon the Fourth Amendment, and the dog's alert justified a search of the vehicle. The police lawfully located a firearm during that search.

**{¶ 23}** The critical issue with respect to Haynes, however, is how long the passenger (Haynes) could reasonably be detained by the officers based on the stop for the driver's warrant.

**{¶ 24}** The duration of an investigatory motor vehicle stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable. *State v. Brown*, 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, ¶ 13, citing *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984). We stated in *Brown*:

> When a lawfully stopped vehicle contains passengers, the Fourth
> Amendment permits law enforcement officers to detain those passengers
> for the duration of the lawful detention of the driver. In addition, the
> Supreme Court has held that, due to concerns for officer safety and the
> minimal intrusion for the driver and passengers, the officers may order both
> the driver and the passengers to exit the vehicle. *Maryland v. Wilson*
> (1997), 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41. In addition, the
> officers may request identification from the passengers without running
> afoul of the Fourth Amendment. As we stated in *[State v.] Morgan*, [2d
> Dist. Montgomery No. 18985, 2002-Ohio-268], "[a] request for identification,
> in and of itself, is not unconstitutional, and is ordinarily characterized as a
> consensual encounter, not a custodial search. The routine questioning of

[the passenger] constituted a minimal intrusion. 'Since detention, not questioning, is the evil at issue, it has been held that, so long as the traffic stop is valid, any questioning which occurs during the detention, even if unrelated to the scope of the detention, is valid so long as the questioning does not improperly extend the duration of the detention.' " *Id.* (citations omitted).

*Brown* at ¶ 14.

**{¶ 25}** Law enforcement officers may detain the driver and passengers only for the time necessary to complete the reason for the stop. "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, __ U.S. __, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015). *Rodriguez* made clear "that an officer may not prolong a traffic stop to perform a drug sniff even if the 'overall duration of the stop remains reasonable in relation to the duration of other stops involving similar circumstances.' " *State v. Hall*, 2017-Ohio-2682, __ N.E.3d __, ¶ 13 (2d Dist.), quoting *Rodriguez*, 135 S.Ct. at 1616.

**{¶ 26}** The investigatory stop of Tims and Haynes did not end with the writing of a citation, but with Tims's arrest on an outstanding warrant. Within one minute of Sergeant Lambert's arrival at the scene, Tims was removed from her vehicle and handcuffed. Approximately a minute and one-half later, Haynes was asked to exit the vehicle, and he was patted down by an officer at that time. Shortly thereafter, the warrant for Tims was

confirmed, and Tims was placed in Lambert's cruiser.

{¶ 27} Tims was under arrest for the outstanding warrant, and the officers had no reasonable articulable suspicion that Tims or Haynes was presently engaged in criminal activity. At this juncture, the purpose of the investigatory stop was complete. In my view, the officers should have returned Haynes's driver's license and allowed him to leave, if he wished.

{¶ 28} The majority relies upon *State v. Caulfield*, 2013-Ohio-3029, 995 N.E.2d 941 (2d Dist.) to support the conclusion that Haynes's continued detention was permissible, because the search of Tims's vehicle was contemporaneous with her arrest.

{¶ 29} In *Caulfield*, the vehicle in which Caulfield was a passenger was stopped after an officer observed that the license plate was completely obstructed by snow. The officer obtained identification from Caulfield and the driver. The LEADS system indicated, among other things, that a warrant had been issued for the driver's arrest; no information was returned on Caulfield. The officer called for back-up, who arrived on the scene a few minutes later. The original officer arrested the driver pursuant to the warrant, and the driver gave consent for the deputies to search his vehicle. The driver was taken to one officer's cruiser, while the other officer approached Caulfield, who was still seated in the front-passenger seat, and asked her to exit the vehicle for the search. At the officer's instruction, Caulfield left her purse in the vehicle. A search of the purse revealed unknown drugs and paraphernalia, and additional drugs and drug paraphernalia were subsequently located on Caulfield.

{¶ 30} On appeal from her conviction, Caulfield claimed, in part, that she was unlawfully detained after the driver's arrest. In rejecting her claim, we noted the general

principle in *State v. Williams*, 2d Dist. Montgomery No. 22924, 2009-Ohio-1627, that "the continued detention of the driver during a lawful search is not unreasonable if it is contemporaneous with the arrest [of the passenger]." *Caulfield* at ¶ 19. Although we noted some factual differences between Caulfield's situation and *Williams*, we stated that, "[j]ust like the driver in *Williams*, Caulfield's ability to continue her means of travel was interrupted, and she was detained as a result of the driver's arrest and the lawful search of the vehicle." *Caulfield* at ¶ 18. Applying *Williams*, we held:

> In this case, the search of the vehicle was conducted contemporaneously with the driver's arrest and the search was lawful pursuant to the driver's consent. The stop had not ended after the driver's arrest because the police had to continue to control the scene for purposes of searching the vehicle. Caulfield was detained incident to the lawful search of the vehicle. Accordingly, Caulfield's detention was reasonable and not illegal.

*Caulfield* at ¶ 19.

{¶ 31} Unlike in *Caulfield*, where the vehicle was stopped for a traffic violation (obstructed license plate), Tims's vehicle was stopped solely due to the outstanding warrant. The arrest of Tims resolved the reason for the investigatory stop in this case, whereas the officer in *Caulfield* had not resolved the basis for the stop – the obstructed license plate – when he learned that the driver had an outstanding warrant and placed the driver under arrest. Consequently, in *Caulfield*, the officers' request to search the vehicle and the driver's consent to the search occurred during the continuing stop for the obstructed license plate. In contrast, when the officers spoke with Tims about whether she would consent to a search of her vehicle, Tims was under arrest for the outstanding

warrant and she was seated in a police cruiser; the basis for the stop was concluded.

{¶ 32} Moreover, unlike in *Caulfield*, Haynes's and Tims's travel was not interrupted by the stop, i.e., they were not en route from one location to another. Tims's vehicle was located in a legal parking space in Tims's apartment complex, having just arrived at the apartment complex. There was nothing inherent in the circumstances that justified Haynes's continued detention at the scene following Tims's arrest.

{¶ 33} The officers had no reasonable suspicion that drugs or other contraband were located in Tims's vehicle. In fact, the officers indicated that they wanted to search her car merely because of the drug-related nature of the warrant. Tims did not consent to a search. In the absence of reasonable articulable suspicion of criminal activity and with the arrest of the driver of a lawfully parked vehicle, the officers had no reasonable basis to continue detaining Haynes as part of an investigatory stop. *See State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997). The fact that Officer Maloney could lawfully walk his canine around Tims's vehicle after Tims's arrest does not make the continued investigatory detention of Haynes lawful.

{¶ 34} The majority asserts that Haynes was voluntarily on the scene, because Tims had asked him (after her arrest while she was in the back of Lambert's cruiser) if he would take her personal items from her vehicle. However, the trial court found that Haynes "reasonably believed he was not free to leave: Off. Maloney never advised Defendant to this effect and never returned his identification to him." This factual finding is supported by the record, and there is no evidence that Haynes remained at the scene voluntarily. Shortly before he was handcuffed, Haynes agreed to Tims's request that he take her personal items, but he was not standing by Lambert's vehicle on his own accord.

The officers had not returned his driver's license to him, and they had directed him to stand by the cruiser during the open-air sniff and the search of the vehicle. At no point was Haynes's encounter with the officers consensual.

{¶ 35} I would hold that any statements that Haynes made to the officers after Tims's arrest should have been suppressed, because the officers had unlawfully prolonged the detention of Haynes in order to perform a drug sniff of Tims's vehicle.

{¶ 36} If Haynes were lawfully detained by the officers during the dog sniff and subsequent search of Tims's vehicle, Haynes's statement regarding his ownership of the gun was made while he was in custody and was the product of interrogation.

{¶ 37} In its decision, the trial court found that Haynes was "certainly not free to leave," and that officer safety was not the reason the officers handcuffed Haynes. These combine for an implicit finding that Haynes was in custody when he was handcuffed. The trial court concluded, however, that Haynes's admission that he owned the gun was a spontaneous statement that was not in response to any questioning from the officers.

{¶ 38} *Miranda* warnings are required only when a suspect is subjected to both custody and interrogation. *State v. Martin*, Ohio Supreme Ct. Slip Opinion No. 2017-Ohio-7556, ¶ 88. " 'Interrogation' includes express questioning as well as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 20 (2d Dist.), quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "Interrogation" must reflect "a measure of compulsion above and beyond that inherent in custody itself." *Innis*, 446 U.S. at 300.

{¶ 39} "Police officers are not responsible for unforeseeable incriminating responses." *State v. Waggoner*, 2d Dist. Montgomery No. 21245, 2006-Ohio-844, ¶ 14; *Strozier* at ¶ 20. "A suspect who volunteers information, and who is not even asked any questions, is not subject to a custodial interrogation and is not entitled to *Miranda* warnings." *State v. Fair*, 2d Dist. Montgomery No. 24120, 2011-Ohio-3330, ¶ 39, citing *State v. McGuire*, 80 Ohio St.3d 390, 401, 686 N.E.2d 1112 (1997).

{¶ 40} The officer did not directly ask Haynes if he owned the gun. However, the record does not support a conclusion that Haynes's statement regarding his ownership of the gun was spontaneous. Haynes's statement was made while the officers were in the process of handcuffing him, and the officers indicated that he would remain handcuffed until they determined who owned the gun; Haynes's response about the gun was reasonably foreseeable. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Here, the State did not meet its burden.

{¶ 41} I would reverse the trial court's suppression as to Haynes's statement and remand for further proceedings.

. . . . . . . . . . . .


Copies mailed to:

Mathias H. Heck
Michael J. Scarpelli
Julius L. Carter
Hon. Steven K. Dankof