[Cite as *State v. Pugh*, 2013-Ohio-1238.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                                     :
                                                 :       Appellate Case No. 25223
            Plaintiff-Appellee                   :
                                                 :       Trial Court Case No. 2011-CR-4050
v.                                               :
                                                 :
JOHN H. PUGH                                     :       (Criminal Appeal from
                                                 :        Common Pleas Court)
            Defendant-Appellant                  :
                                                 :

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of March, 2013.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O.
Box 972, 301 West Third Street, Dayton, Ohio 45422
            Attorney for Plaintiff-Appellee

BYRON K. SHAW, Atty. Reg. #0073124, Law Office of Byron K. Shaw, 4800 Belmont
Place, Huber Heights, Ohio 45424
            Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}    John W. Pugh appeals from his conviction and sentence on three counts of

aggravated robbery with firearm specifications.

{¶ 2}    Pugh advances two assignments of error on appeal. First, he contends the trial court erred in denying his motion to suppress evidence seized during a warrantless search of a house he shared with his girlfriend. Second, he claims his convictions are against the manifest weight of the evidence.

{¶ 3}    The present appeal stems from the armed robbery of a drive-thru. The business was robbed at gunpoint three times in the fall of 2011. During the first robbery, three masked men took cash, cigars, and cigarettes. They also took a cigar box full of change. A surveillance video showed one of the masked men wearing a black jacket with distinctive white stitching. During the second robbery, three masked men stole cash from the business. One of the robbers again wore a black jacket with distinctive white stitching. The third robbery involved only two gunmen. On that occasion, the robbery in progress caught the attention of police officer Shawn Humphrey, who was driving past. Upon seeing Humphrey, the robbers fled on foot without taking anything.

{¶ 4}    Humphrey pursued the two men assisted by officer Phillip Adams. After establishing a perimeter, Adams saw Pugh wearing a black jacket and running away from the direction of the robbery. Adams watched as Pugh ran inside a house at 1313 Kingsley Avenue. Police surrounded the house and ordered the occupants out. Tiffany Selmon, a resident of the house, came outside with her teenaged son. Selmon told police the only other person inside was her eight-year-old son, who was sleeping. But police could see Pugh, an adult male, looking out an upstairs window. Several minutes later, he came outside as well.

{¶ 5}    Police then obtained Selmon's written consent to search the house. Once inside, they found a black jacket with distinctive white stitching that matched the jacket shown

on the surveillance video. They also found a black bag containing a mask, gloves, and a money band with handwriting on it. The drive-thru owner identified the money band as having been taken during the second robbery. The black bag matched a bag carried by one of the gunmen during the second robbery. Police also found a baseball cap that matched a cap worn by one of the robbers during the second robbery. Police additionally recovered bullets and a bullet-proof vest. Two days later, detective Debra Ritchie returned to the house. She obtained Selmon's consent to search the house for the cigar box that was stolen during the first robbery. Police found the box on the floor upstairs. The drive-thru owner identified the box based on markings he had made inside the lid.

{¶ 6} After being indicted for his role in the robberies, Pugh moved to suppress the evidence obtained during the two searches. Pugh argued that Selmon's consent to search was involuntary. The trial court overruled the motion after an evidentiary hearing. A jury subsequently found Pugh guilty on three counts of aggravated robbery with firearm specifications. The trial court imposed an aggregate eighteen-year prison term. This appeal followed.

{¶ 7} Pugh's first assignment of error challenges the trial court's denial of his suppression motion. In a brief argument, he appears to challenge only the second search, which led to discovery of the cigar box. Pugh maintains that police entered the house on that occasion without a warrant and without his consent. Although Selmon gave consent, he contends she was not authorized to consent on his behalf.

{¶ 8} Upon review, we are unpersuaded by Pugh's argument. As an initial matter, Pugh came close to conceding the validity of the second search during the suppression

hearing. After arguing that Selmon's consent to the first search was involuntary, defense counsel added: "Candidly, Your Honor, on the second search I don't feel my argument is as strong as in the first case. And I'll leave it at that." (Tr. Vol. I at 86). In any event, the trial court correctly found that Selmon validly consented to the second search and that Pugh's consent was unnecessary.

{¶ 9} In *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court recognized that "[w]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." Common authority rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* at fn. 7.

{¶ 10} Here Selmon testified that she lived at 1313 Kingsley Avenue and had been renting the house for more than two years. The evidence at issue was found on the floor of a bedroom Pugh and Selmon shared. (Tr. Vol. I at 24, 59-60). Selmon plainly had common authority over the house she shared with Pugh, including the bedroom. Contrary to Pugh's argument, his consent was not required. He was not even present during the second search. Detective Ritchie did not know where he was at that time, but she believed he was in Cincinnati. (*Id.* at 61). Absent a contemporaneous objection from Pugh, Selmon's consent to

search the house was sufficient. *Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).

{¶ 11} Although Pugh does not appear to challenge Selmon's consent to the first search, we find that her consent on that occasion was sufficient as well. When Selmon consented, Pugh was outside sitting in a police cruiser. Although his consent was not sought, there is no evidence that he attempted to object either. (Tr. Vol. I at 12, 19-20). Under these circumstances, Selmon's consent was enough. *Randolph* at 121 ("Although the *Matlock* defendant was not present with the opportunity to object, he was in a squad car not far away[.] * * * [I]f a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out. This is the line we draw, and we think the formalism is justified.").

{¶ 12} Finally, although Pugh's appellate brief does not explicitly challenge the voluntariness of Selmon's consent, he does complain that she consented the first time after police threatened to get a search warrant. (Appellant's brief at 6). The fact that police threatened to get a warrant, however, did not invalidate Selmon's consent. This is so because probable cause for a warrant existed. *State v. Ritchie*, 2d Dist. Miami No. 2000-CA-20, 2000 WL 1209276, *6-7 (Aug. 25, 2000). Officer Adams saw Pugh run from the direction of the robbery into Selmon's house a short distance away. Pugh was wearing a "dark top, dark pants, with red sticking out from under the jacket and a red hat on." (Tr. Vol. III at 301). This clothing matched the clothing worn by one of the two robbers. (*Id.* at 302, 359). Based on these facts, police could have obtained a warrant to search Selmon's house. Advising Selmon

of that fact did not negate the validity of her consent. *Ritchie*. The first assignment of error is overruled.

{¶ 13}   In his second assignment of error, Pugh contends his convictions are against the manifest weight of the evidence. This assertion, however, is premised on the State's evidence being subject to suppression. Pugh's entire argument is as follows:

> In the present case, Appellant's right to be free from illegal searches and seizures was violated by the police entering the residence, where Appellant had an expectation of privacy, without permission and allegedly seiz[ing] evidence linking Appellant to the robberies.
>
> Therefore, Appellant's conviction should be overturned accordingly as being against the manifest weight of the evidence.

(Appellant's brief at 7).

{¶ 14}   Because the trial court properly overruled Pugh's suppression motion, his manifest-weight argument lacks merit. The second assignment of error is overruled.

{¶ 15}   The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH and WELBAUM, JJ., concur.


Copies mailed to:

Mathias H. Heck
Andrew T. French
Byron K. Shaw
Hon. Gregory F. Singer