[Cite as *State v. Pugh*, 2014-Ohio-1533.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

    Plaintiff-Appellee                       :          C.A. CASE NO.    25819

v.                                               :          T.C. NO.    11CR4050

JOHN W. PUGH                                     :          (Criminal appeal from
                                                            Common Pleas Court)

    Defendant-Appellant                      :

                                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____11th____ day of _____April_____, 2014.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JOHN W. PUGH, #659-806, Lebanon Correctional Institute, P. O. Box 56, Lebanon, Ohio 45036
    Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**   Defendant-appellant John W. Pugh appeals, pro se, a decision of the

Montgomery County Court of Common Pleas overruling his petition for post-conviction relief. Pugh filed his motion for post-conviction relief on January 29, 2013. In a decision and entry issued on May 24, 2013, the trial court overruled Pugh's petition. Pugh filed a timely notice of appeal on July 15, 2013.[1]

{¶ 2}  Initially we note that the instant case has already been the subject of an appeal before this Court in *State v. Pugh*, 2d Dist Montgomery No. 25223, 2013-Ohio-1238 (hereinafter "*Pugh I*"). Thus, we set forth the history of the case in *Pugh I*, and repeat it herein in pertinent part:

> The present appeal stems from the armed robbery of a drive-thru. The business was robbed at gunpoint three times in the fall of 2011. During the first robbery, three masked men took cash, cigars, and cigarettes. They also took a cigar box full of change. A surveillance video showed one of the masked men wearing a black jacket with distinctive white stitching. During the second robbery, three masked men stole cash from the business. One of the robbers again wore a black jacket with distinctive white stitching. The third robbery involved only two gunmen. On that occasion, the robbery in progress caught the attention of police officer Shawn Humphrey, who was driving past. Upon seeing Humphrey, the robbers fled on foot without taking anything.

---

[1]Pugh did not file his notice of appeal within thirty days of the issuance of the trial court's decision overruling his petition for post-conviction relief. However, in a decision and entry issued on August 16, 2013, we found Pugh's notice of appeal to be timely filed because the trial court did not comply with Civ. R. 58(B) when it issued the decision from which the instant appeal is taken.

Humphrey pursued the two men assisted by officer Phillip Adams. After establishing a perimeter, Adams saw Pugh wearing a black jacket and running away from the direction of the robbery. Adams watched as Pugh ran inside a house at 1313 Kingsley Avenue. Police surrounded the house and ordered the occupants out. Tiffany Selmon, a resident of the house, came outside with her teenaged son. Selmon told police the only other person inside was her eight-year-old son, who was sleeping. But police could see Pugh, an adult male, looking out an upstairs window. Several minutes later, he came outside as well.

Police then obtained Selmon's written consent to search the house. Once inside, they found a black jacket with distinctive white stitching that matched the jacket shown on the surveillance video. They also found a black bag containing a mask, gloves, and a money band with handwriting on it. The drive-thru owner identified the money band as having been taken during the second robbery. The black bag matched a bag carried by one of the gunmen during the second robbery. Police also found a baseball cap that matched a cap worn by one of the robbers during the second robbery. Police additionally recovered bullets and a bullet-proof vest. Two days later, detective Debra Ritchie returned to the house. She obtained Selmon's consent to search the house for the cigar box that was stolen during the first robbery. Police found the box on the floor upstairs. The drive-thru owner identified the box based on markings he had made inside the lid.

After being indicted for his role in the robberies, Pugh moved to

suppress the evidence obtained during the two searches. Pugh argued that Selmon's consent to search was involuntary. The trial court overruled the motion after an evidentiary hearing. A jury subsequently found Pugh guilty on three counts of aggravated robbery with firearm specifications. The trial court imposed an aggregate eighteen-year prison term. ***

*Id*. at ¶¶ 3-6.

{¶ 3} Pugh advanced two assignments of error on direct appeal. First, he contended that the trial court erred in denying his motion to suppress evidence which was seized during a warrantless search of a house he shared with his girlfriend. Second, he claimed his convictions were against the manifest weight of the evidence. We overruled both of Pugh's assignments of error and affirmed his conviction and sentence. On November 4, 2013, we granted in part Pugh's application to reopen his appeal in order to allow him to pursue a possible claim that the trial court imposed consecutive sentences without first making the requisite judicial findings pursuant to R.C. 2929.14(C)(4).

{¶ 4} On January 29, 2013, Pugh filed a petition to vacate or set aside his judgment of conviction and sentence. Specifically, Pugh argued that his trial counsel was ineffective for failing to present a better defense and for failing to call an expert witness to testify regarding the unreliability of eyewitness identifications. Pugh further argued that the trial court erred when it overruled his motion to suppress. Pugh asserted that the trial court erred by not merging his convictions as allied offenses of similar import. Pugh, however, failed to attach any evidence, affidavits, or supporting materials to substantiate his claims.

{¶ 5} The trial court overruled Pugh's petition without a hearing in a decision

issued May 24, 2013. The trial court found that each of the arguments raised by Pugh in his petition were issues that could or should have been raised on direct appeal and not in a petition for post-conviction relief.

{¶ 6} It is from this judgment that Pugh now appeals.[2]

{¶ 7} Because they are interrelated, Pugh's first and third assignments will be discussed together as follows:

{¶ 8} "THE TRIAL COURT ERRED IN DEFENDANT-APPELLANT FIRST ASSIGNMENT OF ERROR WHEN IT FAIL TO GIVE FINDINGS OF FACTS AND CONCLUSION OF LAW."

{¶ 9} "THE TRIAL COURT ERRED IN DEFENDANT-APPELLANT'S THIRD ASSIGNMENT OF ERROR WHEN THE TRIAL COURT FAIL TO MAKE FINDING OF FACTS AND CONCLUSION OF LAW ON DEFENDANT-APPELLANT'S INEFFECTIVE ASSISTANCE CLAIMS."

{¶ 10} In his first and third assignments, Pugh contends that the trial court erred when it failed to issue any findings of fact and/or conclusions of law when it overruled his petition for post-conviction relief.

{¶ 11} Post-conviction relief is governed by R.C. 2953.21. The statute provides, in pertinent part, that:

> Any person who has been convicted of a criminal offense * * * and

---

[2] We note that Pugh filed his appellate brief on October 23, 2013. Additionally, Pugh filed a "supplemental amended brief" that was time stamped October 22, 2013. It is unclear from the record why Pugh's supplemental brief was filed a day before his actual merit brief was filed.

who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief. R.C. 2953.21(A)(1)(a).

{¶ 12} "A post[-]conviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment." *State v. Steffen,* 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994). See, also, *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶48. To prevail on a petition for post-conviction relief, the defendant must establish a violation of his constitutional rights which renders the judgment of conviction void or voidable. R.C. 2953.21.

{¶ 13} The post-conviction relief statutes do "not expressly mandate a hearing for every post-conviction relief petition and, therefore, a hearing is not automatically required." *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). Rather, in addressing a petition for post-conviction relief, a trial court plays a gatekeeping role as to whether a defendant will receive a hearing. *Gondor* at ¶51. A trial court may dismiss a petition for post-conviction relief without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86

Ohio St.3d 279, 714 N.E. 2d 905 (1999), paragraph two of the syllabus; *Gondor* at ¶51.

{¶ 14} We review the trial court's denial of Pugh's petition for an abuse of discretion. *Gondor* at ¶52. As the Supreme Court of Ohio determined:

> "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

> A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 15} When a trial court dismisses a petition for post-conviction relief on its merits, the court is required to state findings of fact and conclusions of law that support its judgment. *State v. Lester* , 41 Ohio St.2d 51, 322 N.E.2d 656 (1975); *State v. Mapson*, 1 Ohio St.3d 217, 438 N.E.2d 910 (1982); *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999); R.C. 2953.21(C). Two main policy considerations underlie the requirement: (1) to make the petitioner aware of the grounds for the trial court's judgment, and (2) to provide a sufficient record to enable meaningful appellate review of the trial court's decision. *Mapson, supra*. If the trial court dismisses a petition for post-conviction relief

without conducting an evidentiary hearing and without making the required findings of fact and law, the trial court's decision does not constitute a valid judgment and final order from which an appeal can be taken. *State ex rel. Ferrell v. Clark*, 13 Ohio St.3d 3, 469 N.E.2d 843 (1984).

{¶ 16} In its May 24, 2013, judgment dismissing Pugh's petition for post-conviction relief, the trial court did not specifically identify with labels or headings its "findings of fact and conclusions of law." However, the trial court made findings. The court's explanation of its rationale for denying Pugh's post-conviction relief is not a bare one as suggested by Pugh. To the contrary, the trial court's rationale for its decision is clearly set forth in its judgment entry in sufficient detail to satisfy *Mapson*'s policy considerations and enable meaningful appellate review of that decision. In its decision, the trial court concluded that all of Pugh's "complaints are matters for appeal." The trial court also noted that Pugh's case had been previously appealed to this Court and that we had "affirmed [the trial court's] original findings of fact and law." See *Pugh I*. While not stated as such, the trial court essentially found that Pugh's claims in his petition for post-conviction relief were barred by the doctrine of res judicata, in that they could have been raised or were raised on direct appeal. Accordingly, the trial court's May 24, 2013, judgment satisfies the requirement in R.C. 2953.21 for findings of fact and conclusions of law. *State ex rel Carrion v. Harris*, 40 Ohio St.3d 19, 530 N.E.2d 1330 (1988).

{¶ 17} Pugh's first and third assignments of error are overruled.

{¶ 18} Because they are interrelated, all of Pugh's remaining assignments of error will be discussed together as follows:

{¶ 19} "THE TRIAL COURT ERRED IN DEFENDANT-APPELLANT SECOND ASSIGNMENT OF ERROR WHEN TRIAL COURT FAIL TO PRESENT AN EXPERT WITNESS TO TESTIFY AS TO THE UNRELIABLE NATURE OF EYEWITNESSES IDENTIFICATION OR ANY OTHER WITNESSES SO-CALLED IT IDENTIFICATIONS WHICH WAS UNDULY SUGGESTIVE."

{¶ 20} "ALSO SET FORTH, THAT DEFENDANT-APPELLANT SHOULD BE GRANTED A NEW TRIAL BECAUSE THE TRIAL TESTIMONY OF THE STATE WITNESSES BASED ENTIRELY ON ITS HOLDING THAT THE IDENTIFICATION TESTIMONY OFFERED BY BRIAN JONES AND SO-CALLED OTHERS STATE WITNESSES VIOLATES DEFENDANT-APPELLANT DUE PROCESS RIGHTS BECAUSE THE TESTIMONY WAS BASED ON AN IMPERMISSIBLY SUGGESTIVE IDENTIFICATION PROCESS. SUPREME COURT OF OHIO 110 OHIO ST. 1230; 2006 OHIO 3667; 850 N.E.2D 1208; 2006 OHIO LEXIS 2173."

{¶ 21} "ALSO THE ADMISSION OF IMPERMISSIBLY SUGGESTIVE IDENTIFICATION EVIDENCE OBTAINED BY UNNECESSARY MEASURES VIOLATES A DEFENDANT-APPELLANT'S CONSTITUTIONAL DUE PROCESS RIGHTS IN CASES WHERE THE TOTALITY OF THE CIRCUMSTANCES DOES NOT SUPPORT RELIABILITY OF THE VERDICT. ALSO DOES NOT SUPPORT THE RELIABILITY OF THE IDENTIFICATION. SEE MANSON V. BRATH WAITE (1977). 432 U.S. 98 S.CT. 2243, 53 L.ED.2D 140. ALSO SEE 257 F.3D 122, 2001 U.S. APP. LEXIS 156.30."

{¶ 22} "IN THIS CASE DEFENSE COUNSEL MADE ERRORS THAT WAS UNPROFESSIONALLY, UNREASONABLE UNDER ALL THE CIRCUMSTANCES,

DEFENDANT-APPELLANT HAS ESTABLISH PREJUDICE BUT FOR THE UNREASONABLE ERRORS THERE IS A REASONABLE PROBABILITY THAT THE RESULTS OF THE PROCEEDING WOULD HAVE BEEN DIFFERENT."

{¶ 23} "DEFENDANT-APPELLANT MAINTAIN THAT HIS ROBBERY CONVICTION OF MULTIPLE PUNISHMENTS ARE ALLIED OFFENSES OF SIMILAR IMPORT AN PERMITS DEFENDANT-APPELLANT TO BE CHARGES WITH, AND TRIED FOR, MULTIPLE OFFENSES BASED ON THE SAME CONDUCT BUT PERMITS ONLY ONE CONVICTION BASED ON CONDUCT THAT RESULTS IN SIMILAR CRIMINAL WRONG THAT HAVE SIMILAR CONSEQUENCES."

{¶ 24} In *State v. Goldwire*, 2d Dist. Montgomery No. 20838, 2005-Ohio-5784, we held the following:

"'The most significant restriction on Ohio's statutory procedure for post-conviction relief is that the doctrine of res judicata requires that the claim presented in support of the petition represent error supported by evidence outside the record generated by the direct criminal proceedings.' *State v. Monroe*, Franklin App. No. 04AP-658, 2005-Ohio-5242. 'Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.' *State v. Perry* (1967), 10 Ohio St.2d 175, 180, 226 N.E.2d 104. 'Our statutes do not

contemplate relitigation of those claims in post conviction proceedings where there are no allegations to show that they could not have been fully adjudicated by the judgment of conviction and an appeal therefrom.' *Id*. 'To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and show that he could not have appealed the claim based upon information contained in the original record.' *State v. Aldridge* (1997), [120] Ohio App.3d 122, 151, 697 N.E.2d 228. 'Res judicata also implicitly bars a petitioner from "repackaging" evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal.'" *Id*., at ¶ 11.

**{¶ 25}** Initially, we note that Pugh failed to provide a transcript of the proceedings below, pursuant to App. R. 9(B); a statement of the evidence under App. R. 9(C); or an agreed statement of the case under App. R. 9(D). It is the duty of the appellant to order from the court reporter a transcript of the proceedings or part thereof that the appellant considers necessary for inclusion in the record, and to file a copy of the order with the clerk. App.R. 9(B). Here, Pugh failed to comply with that duty. Moreover, Pugh failed to attach any evidence, affidavits, or supporting materials to substantiate his claims, and the issues that he raises are all barred by res judicata.

**{¶ 26}** Because Pugh's sentence, assuming his allied offense argument had merit, would be voidable, he is barred by the doctrine of res judicata from challenging his sentence on those grounds collaterally through his petition for post-conviction relief. *Smith v. Voorhies*, 119 Ohio St.3d 345, 2008-Ohio-4479, 894 N.E.2d 44, ¶ 10-11 ("allied-offense

claims are non-jurisdictional," and, thus, barred by the doctrine of res judicata where they were raised, or could have been raised, on direct appeal). We also note that we already considered the issue of merger of Pugh's three aggravated robbery convictions when he advanced the same argument in his application to reopen his direct appeal. In an entry issued on November 14, 2013, we found that Pugh's merger argument had no merit and overruled that portion of his application to reopen.

{¶ 27} Pugh's arguments regarding the pre-trial identification procedures utilized by the police are likewise barred by res judicata because they could have been raised in a motion to suppress or on direct appeal. Pugh's arguments rely on facts and evidence known to him at the time of trial. Thus, res judicata bars them from being considered in a petition for post-conviction relief. *State v. Goldwire*, 2005-Ohio-5784, ¶ 11.

{¶ 28} Pugh's remaining claims in his supplemental brief regarding unsupported allegations of prosecutorial misconduct, challenges to the strength of the evidence used to convict him, and his ineffective assistance of counsel claims are only conclusory in nature, and they are, therefore, barred by the doctrine of res judicata.

{¶ 29} Pugh's remaining assignments of error are overruled.

{¶ 30} All of Pugh's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Andrew T. French
John W. Pugh

Hon. Gregory F. Singer