[Cite as *State v. Mort*, 2026-Ohio-249.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JESSICA ANN MORT,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 MA 0078

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2025 CR 00065

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Lynn Maro*, Mahoning County Prosecutor and *Atty. Kristie M. Weibling*, Assistant Prosecutor, for Plaintiff-Appellee

*Atty. Michael O. Kivlighan*, for Defendant-Appellant

Dated: January 28, 2026

---

**WAITE, P.J.**

{¶1}   Appellant Jessica Ann Mort appeals the July 18, 2025 decision of the Mahoning County Court of Common Pleas denying her motion to suppress evidence. The motion was based on the assertion that her boyfriend lacked the ability to consent to a search of her purse, which was inside of his truck.  In her motion she sought to exclude drugs found in that purse.  Because this discovery led to the discovery of drugs on her person, she sought exclusion of this evidence also, as well as certain incriminating statements.  Appellant contends that neither she nor her boyfriend exhibited behavior that would lead police officers to believe they were engaging in criminal activity.  Even so, she argues that her boyfriend's consent to a police search of his vehicle did not extend to include a search of her purse.  Because she contends this search was improper, she argues that any evidence from the subsequent search of her person and any statements she made after the search should also be deemed inadmissible as fruit of the poisonous tree.  For the reasons provided, Appellant's arguments have merit.  The judgment of the trial court is reversed and the matter is remanded for the state to determine if it can proceed without the evidence obtained from the search of Appellant's purse and her person, along with any statements she made after the search.

Factual and Procedural History

{¶2}   This appeal stems from a traffic stop that occurred at approximately 5:00 p.m. on January 12, 2024.  Robert Helman, Appellant's boyfriend, was operating a green F-150 Ford pickup truck eastbound on route 224 in Canfield.  Appellant was in the passenger seat.  Sergeant Aaron Young observed expired registration tags on the truck. Sgt. Young then saw the truck abruptly turn into the parking lot of a restaurant.  Based on

the expired tags, Sgt. Young initiated a traffic stop of the truck. The following events occurred in the restaurant parking lot.

**{¶3}** As Sgt. Young approached the truck, Helman opened his door, because the window apparently did not open. Sgt. Young stood towards the back of the driver's door and Helman had to look backwards and lean out in order to speak to him. Helman informed Sgt. Young that he planned to go to a friend's house. When asked why he pulled into the restaurant parking lot, he responded that he and Appellant intended to eat dinner before heading to the friend's house. Again, it was 5:00 p.m. at the time of the stop. Sgt. Young obtained Helman and Appellant's names and searched them in the LEADS system, which revealed Helman had prior breaking and entering and concealed carry convictions and Appellant had been convicted of disorderly conduct in the past.

**{¶4}** Sgt. Young wore a body camera. Sgt. Young and an unidentified officer, who provided backup, discussed the stop, and their conversation was recorded. Sgt. Young expressed curiosity as to why Helman turned suddenly into the parking lot. He posited that there were multiple possibilities, but wondered whether a gun may be inside the vehicle due to Helman's past concealed carry conviction.

**{¶5}** Sgt. Young conceded on the recording that Helman's quick turn into the parking lot was equally likely the result of Helman's awareness that his registration tags had expired two months earlier, and speculated that Helman sought to avoid a traffic infraction by preventing the officer from clearly seeing his license plate. Also, although he appeared not to find Helman's story plausible, it was possible he was being truthful when he told Sgt. Young that they simply wanted to eat dinner before heading to a friend's house.

{¶6}    From this recorded exchange it can be gleaned that even though Sgt. Young did not believe Helman entered the parking lot to eat dinner in the restaurant, he understood that he lacked conclusive reasons to further detain Helman, because he recognized there could be several plausible explanations for Helman's action in quickly entering the parking lot, and these were not necessarily criminal.  Despite conceding that he had no probable cause that any crime had been committed or was being committed, Sgt. Young informed the other officer that he intended to "get [Helman] out, gonna chat him up a little bit."  (Exh. 1, 11:02.)

{¶7}    Sgt. Young then ordered Helman out of the truck.  Sgt. Young took Helman behind the vehicle, near the police cruiser.  During this conversation with Sgt. Young, Helman acknowledged his prior convictions but denied currently having weapons or contraband on his person or inside of his truck.  When Sgt. Young asked if he could search the truck, Helman consented.  After a search of Helman's person revealed no contraband, Sgt. Young walked over to the passenger side of the truck and ordered Appellant out.

{¶8}    Appellant had been sitting inside the truck in the passenger seat while Sgt. Young and Helman were interacting outside, behind the truck.  Hence, Appellant had no idea that Helman had consented to a search.  Appellant was in the midst of a call on her cell phone, which she held in one hand.  In her other hand, she held a lit cigarette.  As she exited the truck, she appeared confused on the video and asked Sgt. Young if "everything was ok," to which he responded, "yes" and said that he would explain shortly.  Instead of offering her an explanation, he walked her back to where Appellant and the

other officer stood and immediately returned to the truck to begin his search. We do not know whether the other officer offered her any explanation as to what was occurring.

{¶9} While the search of the vehicle itself proved to be fruitless, Sgt. Young can be seen removing Appellant's purse from its position on the center console and searching the purse. We note that the video of the search reveals several important facts. First, the truck did not have a backseat. Thus, there were no rear seats or flooring behind the driver and passenger seats. The truck had no interior cargo area, as the seats were positioned in the cab closely against the bed area. The state contends Appellant's purse was within easy reach of the driver, but this appears not to be the case. It appears that four to six inches separated the driver and passenger seats from the rear window. The center console stretched between the driver and front passenger seat areas from mid-seat and extended to and abutted against the back window. There is no space between the back of the console and the rear window. We can see that the console was considerably raised above seat level, possibly more than twelve inches, and was very wide. The purse had been turned sideways on the console and pushed up against the window, as closely as was possible to the bed. Thus, while the purse was technically not in the "backseat," it was pushed as far away from the front seat area as it could be located. In order to reach the purse, Appellant or Helman would have needed to reach behind their seats and over the console. From the video, it is clear the top of the purse, containing its opening, would probably have been as high as chin level for the driver and passenger, due to both the height of the console and size of the purse.

{¶10} The state asserts that the purse was open inside the vehicle. While this is technically true, in that from the video the purse does not appear to have a closing

mechanism, such as a zipper or latch, there were several sheets of neatly placed and undisturbed pieces of paper that were laid on top of the purse opening, acting as a lid. This coverage also prevented an observer from looking inside of the purse and from observing its contents. The papers were pulled through both purse handles, securing the papers in place. Thus, in order to retrieve an item or place an item in the purse, the papers would first have to be unsecured from the straps and removed from the purse opening. This placement reveals that the papers were deliberately placed and intended to act as a closure, substituting for a zipper or latch. Nothing about the state of these papers suggested that they had been moved since their placement.

{¶11} The video also shows there was a medium to large sized red plastic bag, apparently from a convenience store, placed on the center console in front of the purse. This bag sat almost directly between Helman and Appellant. While both occupants could certainly retrieve items from this plastic bag easily, its location (along with the height of the console) made it much more difficult for either the driver or passenger to reach the purse. It appears that the driver, who would have been forced to reach both up and back to retrieve the purse and attempt to remove its covering could not have done so while driving, and it would have been difficult even with vehicle at a stop.

{¶12} Sgt. Young did not ask Appellant for permission to search her purse prior to searching it. Inside the purse, Sgt. Young discovered a silver vile that contained an unknown white, powdery substance. While opening the vile, Sgt. Young fumbled. As a result, he dumped the entire contents into Appellant's purse. Sgt. Young approached Appellant and inquired what the substance was, to which she responded that it was a crushed "Norco" pill from a "busted" bottle. She later explained that she received the vile

from her brother and was not entirely certain if it was a crushed prescription drug or cocaine, which her brother uses and she had used in the past. Sgt. Young performed a field test which revealed the substance as cocaine.

{¶13} Based on this discovery, Sgt. Young subsequently searched Appellant's person and located a metal tin with two multi-colored vials containing unknown substances, a small spoon with a white powder, a cut straw, and a razor blade. Appellant told Sgt. Young that one of the vials might contain cocaine.

{¶14} As no contraband was discovered during the search of the truck itself or Helman's person, he was issued a traffic citation and permitted to leave. However, Appellant was arrested and taken into custody based on discovery of the drugs and paraphernalia.

{¶15} On February 27, 2024, Appellant was indicted on one count of aggravated possession of drugs, a felony of the fifth degree in violation of R.C. 2925.11 (A)(C), (1), (a), and one count of possession of cocaine, a felony of the fifth degree in violation of R.C. 2925.11 (A)(C), (1), (a).

{¶16} On April 28, 2025, Appellant filed a motion to suppress the drugs discovered during the search of her purse, drugs subsequently found on her person, and statements she made following these searches. On May 23, 2025, the court held a pretrial conference. The parties agreed to submit only briefs on the motion, along with Sgt. Young's body camera video, and waive oral argument. Because no hearing was held on the matter and no other evidence was introduced, we are limited to what can be heard and observed on the body camera video. The record contains no independent evidence as to Sgt. Young's thoughts and impressions before or during his searches. On June 3,

2025, the court denied Appellant's motion to suppress. While the court referenced consent, it appears that the court based its decision on the automobile exception to the warrant requirement. However, the court did not provide a detailed analysis of its decision to deny the motion. On July 1, 2025, Appellant filed a motion to reconsider which was denied.

{¶17} On July 2, 2025, Appellant pleaded no contest to both counts as charged, aggravated possession of drugs and possession of cocaine. On July 18, 2025, the court sentenced Appellant in accordance with the parties' agreement. The court did not set forth individual sentences, instead imposing a single two-year community control term. The court noted that violation of community control would result in Appellant serving a two-year prison term and 360 days of local incarceration. It is from this entry that Appellant timely appeals.

{¶18} We note that while Appellant filed a timely brief, the state sought and received two extensions in which to file, the first being twenty days and the second, fourteen days.

## Motion To Suppress

{¶19} This matter entirely rests on a motion to suppress evidence filed by Appellant. A motion to suppress presents mixed issues of law and fact. *State v. Lake*, 2003-Ohio-332, ¶ 12 (7th Dist.), citing *State v. Jedd*, 146 Ohio App.3d 167, 171 (4th Dist. 2001). If a trial court's findings of fact are supported by competent credible evidence, an appellate court must accept them. *Id.* The court must then determine whether the trial court's decision met the applicable legal standard. *Id.*

{¶20} After the trial court denied Appellant's motion to suppress, she pleaded no contest to the charges, thus preserving her right to appeal the issues raised within her motion to suppress.

### Fourth Amendment

{¶21} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures and require warrants to be particular and supported by probable cause." *State v. Telshaw*, 2011-Ohio-3373, ¶ 12 (7th Dist.). In order for a search or seizure to be lawful, there must be probable cause to believe evidence of criminal activity will be found and the search or seizure must be executed pursuant to a warrant, unless some exception to the warrant requirement exists. *State v. Ward*, 2011-Ohio-3183, ¶ 33 (7th Dist.).

{¶22} Hence, a valid search must be supported by a warrant or be based on a recognized exception to the warrant requirement. *State v. Ambrosini*, 2015-Ohio-4150, ¶ 8 (7th Dist.), citing *Katz v. U.S.*, 389 U.S. 347, 357 (1967). In Ohio, there are seven recognized exceptions to the warrant requirement: (1) a search incident to a lawful arrest; (2) consent; (3) the stop-and-frisk doctrine; (4) hot pursuit; (5) probable cause plus the presence of exigent circumstances; (6) the plain view doctrine; and (7) administrative searches. *State v. McGee*, 2013-Ohio-4165, ¶ 17 (7th Dist.), citing *State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51 (1985).

{¶23} This matter involves evidence discovered from the search of a purse located inside an automobile which was not attributed to the driver of the vehicle at issue, but to the passenger. We have recently underscored that "[d]uring a valid traffic stop, officers

may order the occupants of a vehicle out of the vehicle pending completion of the stop without violating the Fourth Amendment." *State v. Davis*, 2020-Ohio-4821, ¶ 17 (7th Dist.), citing *State v. Chapman*, 2019-Ohio-3339, ¶ 37 (7th Dist.); *Maryland v. Wilson*, 519 U.S. 408 (1997). We have also "previously acknowledged the application of this rule to passengers of a vehicle even if the reason for the traffic stop is attributable only to the driver." *State v. Gay*, 2021-Ohio-3308, ¶ 13 (7th Dist.), citing *State v. Koczwara*, 2014-Ohio-1946, ¶ 19 (7th Dist.); *Wilson*, 519 U.S. at 413-415 (1997).

**{¶24}** In the trial court's entry, it determined: "The Defendant's [sic] argues the driver's consent to search did not extend to her purse. The Court finds the Defendant is mistaken. Under the automobile exception, the permissible search extends to passengers' belongings found in the car that are capable of concealing objects." (6/3/25 J.E.) From this, it appears the court's decision is based on the vehicle exception but also mentions consent.

<u>ASSIGNMENTS OF ERROR NOS. 1, 2, & 3</u>

Did Sgt. Young have sufficient probable cause to justify the search of the subject vehicle and its contents that may conceal the object of the search.

Can Mr. Helman's consent to search his vehicle allow Sgt. Young to search closed containers within the Defendant-Appellant's purse.

Is there any evidence to suggest that the behaviors or actions of either individual that would lead Sgt. Young to believe either were armed or about to be engaged in criminal activity.

<u>Case No. 25 MA 0078</u>

{¶25} Our analysis begins with the "automobile exception" to the warrant requirement, as this is the theory the trial court relied on in denying the motion. Appellant explains that the automobile exception is two pronged, in that an officer must have probable cause to believe that evidence of criminal activity is contained within the vehicle sought to be searched and also that the vehicle must be readily mobile. It springs from the fifth exception to the warrant requirement discussed in *McGee*. Appellant argues that the first prong has not been satisfied, as Sgt. Young did not observe any contraband or criminal activity from his vantage point that provided probable cause to believe a crime had been committed or was in the process of being committed. Appellant cites to the body camera footage, where Sgt. Young admits that his purpose for stopping the vehicle was related to the registration tags and observing the vehicle abruptly turn into the parking lot. He conceded that he had no reason to believe Helman's quick turn was caused by fear that he would be pulled over and a firearm might be found in the vehicle, because his actions could be explained as he simply sought to avoid a traffic citation related to his expired registration tags. To prolong the stop, Sgt. Young stated that he was "going to get [Helman] out and chat him up a little bit," suggesting he was engaging a stalling tactic to try to obtain information that might support probable cause. Appellant believes this violates Ohio law, which requires an officer to limit the scope and duration of a traffic violation if the officer does not have probable cause to believe criminal activity is afoot. While Sgt. Young knew Helman had a prior firearm conviction, Appellant argues that this fact, alone, cannot serve as a basis for prolonging a traffic stop based on the expired registration.

**{¶26}** The state does not respond to Appellant's arguments pertaining to the automobile exception to the warrant requirement, and instead relies only on Helman's consent to search his truck.

**{¶27}** Our analysis must begin with the traffic stop, itself. There is no question that Sgt. Young was entitled to initiate a traffic stop of the vehicle after observing it operating on the road with expired registration tags. There is also no question that Sgt. Young was permitted to engage in questioning with Helman related to the purpose of the stop, including asking for identification, proof of insurance, and registration of the vehicle. *State v. Chapman*, 2019-Ohio-3339, ¶ 36 (7th Dist.). Similarly, Sgt. Young was permitted to order both passengers out of the vehicle while the stop was pending.

**{¶28}** During a valid traffic stop, "any questioning which occurs during the detention, even if unrelated to the scope of the detention, is valid so long as the questioning does not improperly extend the duration of the detention." *Id.,* citing *State v. Chagaris*, 107 Ohio App.3d 551, 556-557 (9th Dist.1995).

**{¶29}** Moving to the automobile exception to the warrant requirement, it "was created based on the ready mobility of automobiles and the lesser expectations of privacy surrounding an automobile." *State v. Green,* 2023-Ohio-4503, ¶ 23 (7th Dist.), citing *California v. Carney*, 471 U.S. 386, 391 (1985). Pursuant to the automobile exception, where "probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *State v. Vega*, 2018-Ohio-4002, ¶ 13, quoting *United States v. Ross*, 456 U.S. 798, 825 (1982). Thus, it is insufficient to rely on only one prong of the test, the ready

mobility of the vehicle, alone. Officers must have probable cause to believe that evidence of a crime will be found within the vehicle. *Green* at ¶ 24.

**{¶30}** The seminal case in regard to an officer's search of a passenger's purse which is located inside a third-party's vehicle is *Wyoming v. Houghton,* 526 U.S. 295 (1999). In *Houghton,* officers initiated a traffic stop of a vehicle for speeding and operating with a faulty brake light. *Id.* at 297. While an officer questioned the driver, he noticed a hypodermic syringe in the driver's shirt pocket. When asked about the syringe, the driver readily admitted that he used it to take drugs. *Id.* at 298.

**{¶31}** The officer also spoke to the appellant, a passenger in the vehicle, and asked her to identify herself. She complied, but claimed that she did not have identification. The officer noticed a purse in the backseat and the appellant admitted that it belonged to her. The officer removed a wallet that contained an identification card which alerted the officer to the fact that she had given him a false name. Also within the purse, the officer discovered drugs and drug paraphernalia. *Id.* at 298. The officer saw needle marks on the appellant's arm.

**{¶32}** The United States Supreme Court narrowed the issue, not to whether officers had reason to believe who owned the purse, but whether officers had probable cause to believe that a criminal offense had occurred or was in the process of occurring and whether evidence of that offense could be found within that purse. *Id.* at 300. The *Houghton* Court concluded that officers held probable cause to believe that a drug-related offense had occurred or was in the process of occurring because of the syringe that the driver admitted was used to take illegal drugs. Hence, officers were permitted to search not only the vehicle but also its contents in places where drugs could be discovered, such

as a purse, pursuant to the automobile exception to the warrant requirement. *Id.* at 302. The *Houghton* Court cautioned that the issue must be considered on a case-by-case basis, and different facts would certainly lead to different results. *Id.* at 305.

**{¶33}** We recently applied *Houghton* in *State v. Green,* 2023-Ohio-4503 (7th Dist.). In *Green,* a police officer observed a driver of a vehicle engage in a "hand-to-hand transaction" with a known drug user in an area where drug deals often took place. *Id.* at 3. The officer also heard one of the individuals caution the other to be careful, as police were in the area. The officer approached the vehicle and spoke to the driver, who was uncooperative. *Id.* at ¶ 7. While talking to the driver, the officer noticed a person was sitting in the backseat with a small backpack sitting between her legs, the appellant.

**{¶34}** In the meantime, a K9 dog arrived to perform a sniff around the vehicle, however, officers struggled with the driver of the vehicle who was uncooperative. During the struggle, officers noticed the appellant clutch the backpack and attempt to leave the area. Officers reached her and escorted her back to the area of vehicle. The K9 sniff took seven seconds to complete and resulted in an area of the vehicle. During the ensuing search, drugs and drug paraphernalia were discovered in the backpack. *Id.* at ¶ 9-10.

**{¶35}** The trial court denied a motion to suppress evidence seized from the backpack, finding that the automobile exception to the warrant requirement authorized a search of the vehicle and its contents, including the backpack. On appeal, we affirmed the trial court's decision, holding that officers clearly had probable cause to believe that a drug-related offense had occurred after observing an apparent drug deal in an area known for drug transactions. This probable cause authorized a search of the vehicle,

including its contents, that could contain evidence of drugs. Because the backpack was inside of the vehicle and because the appellant attempted to evade police contact with the backpack, officers had probable cause to search the backpack for drugs. *Id.* at ¶ 30.

**{¶36}** With this in mind, the instant case hinges on whether Sgt. Young had probable cause to believe Helman or Appellant had committed or were committing a specific crime and evidence of that crime would be found in the vehicle. This probable cause must exist in addition to whatever minor traffic violation that caused the stop. In other words, the expired registration tags, alone, do not give rise for Sgt. Young to validly search the interior of the vehicle for evidence of an unrelated criminal offense. And of course, any probable cause must exist prior to the officer's search, otherwise the search would not be based on probable cause.

**{¶37}** At the time of the search in this case, Sgt. Young's body camera clearly contains his admission that he had no specific reason to believe that any crime, other than the traffic infraction, had been committed. Sgt. Young conceded that Helman's act of "whipping" into the parking lot could have been because he knew he was driving with an expired registration tag. Sgt. Young's only suspicion regarding possession of a weapon arose from learning that Helman had a prior conviction involving a firearm at some time in the past.

**{¶38}** Sgt. Young discussed with the unidentified officer who provided backup at the stop his intention to determine what caused Helman to suddenly pull into the restaurant's parking lot.

Sgt Young: I pulled out behind them and he immediately whipped into here [parking lot] and then I asked him where he is going and he said

he is going to a friend's house. So, he had no reason to be turning into here. So I don't know if got a gun in there, he has a prior for carrying concealed. Or if he just whipped in because of the almost expired two-month plate. So, I'm gonna get him out, gonna chat him up a little bit.

(Exh. 1, 11:02.) We note that Sgt. Young omitted from this discussion that Helman also told him that he and Appellant intended to eat before going to their friend's house.

**{¶39}** The state urges that Appellant's prior concealed carry conviction gave Sgt. Young probable cause to believe that a firearm might have been in the vehicle. The record does not contain the date of Helman's conviction. Regardless, in Ohio a person's criminal record can only serve as the basis for probable cause where there is additional evidence to support it. *State v. Jones*, 2020-Ohio-6667 (3d Dist.); *State v. Siegel*, 2021-Ohio-4208 (4th Dist.). Hence, the question becomes whether Sgt. Young had any knowledge to support probable cause, aside from Helman's prior conviction, to believe that a firearm was inside the vehicle.

**{¶40}** We again note that the parties submitted only briefs on the motion to suppress without oral argument. There was no hearing on the matter. This is significant, as Sgt. Young's thought processes and actions can only be determined from his statements heard in the body camera evidence. He did not testify nor did he file a police or incident report.

**{¶41}** Sgt. Young conceded on the video that one of the reasons for Helman's action in abruptly turning into the restaurant's parking lot could have been because he had expired registration tags, noting that they had been expired for some weeks. He speculates that Helman knew the registration tags were long expired and noticed a police

cruiser was driving behind him in a position to observe his expired registration tag. Hence, he abruptly turned into the parking lot in an attempt to avoid a traffic citation.

{¶42} At no time does Sgt. Young state there was reason to believe Helman had a gun on his person or inside his truck, nor did he provide any articulable basis to believe Helman might have possessed a weapon at the time. The record reflects Helman made no furtive movements and did not appear to have anything in his hands. The record shows that, at the dinner hour, Helman suddenly and abruptly turned his vehicle into the parking lot of a restaurant, perhaps with knowledge that his registration tags were expired and that a police cruiser was behind him.

{¶43} While the state claims that Helman did not make eye contact during the encounter with Sgt. Young, this is unsupported by the video evidence. When Sgt. Young approached the vehicle, Helman was forced to open the door because the driver's window was not working. Sgt. Young stood towards the back of the door and was positioned somewhat behind Helman, thus making eye contact difficult unless the driver was to reposition himself in the seat of the vehicle.

{¶44} As to Helman's initial statement that he was on his way to a friend's house, again, Sgt. Young conceded on video that Appellant's quick turn into the parking lot could easily have been an attempt to avoid a ticket, something Helman would not necessarily want to say to the officer. Also, Helman told Sgt. Young that he and Appellant planned to eat dinner before heading to a friend's house. At the time Helman entered the restaurant parking lot, it was 5:00 p.m. It is plausible, based on the video, that he made a last-minute decision in choosing a place to eat.

**{¶45}** Sgt. Young never mentioned he was concerned about drug activity during his encounter, and his supposed concern regarding Helman's possession of a weapon arose merely because Helman had a prior conviction for concealed carry. While Sgt. Young spoke to Helman, nothing in their exchange would raise any articulable cause to believe that a firearm or contraband was inside the vehicle, let alone provide enough information to support probable cause. Thus, the automobile exception to the warrant requirement does not support a valid search of the vehicle and its contents.

**{¶46}** Again, the trial court appears to have relied on the automobile exception to the warrant requirement in denying the motion to suppress. The state also alleged that Helman's consent would extend to Appellant's purse. It is unquestionable that Helman gave consent to Sgt. Young for a search of his vehicle when asked. Even though this search cannot be justified by means of the automobile exception, which does not apply under the facts of this case, the court's decision may still be affirmed if Helman's consent to search his truck in this instance equally applied to the search of Appellant's purse.

**{¶47}** Appellant explains that, under Ohio law, before third-party consent can be valid, officers must have a reasonable belief that the third party had authority to consent to the search. Appellant contends that there are no facts in this case to suggest that Helman had any control or authority over her purse and there was no evidence either of them possessed contraband at that point. If the search of her purse was invalid, the contraband taken from it and from her person, which was based solely on the search of her purse, must be suppressed. Appellant also argues that any statements she made in response to questions asked by police subsequent to searching her purse are barred as fruit of the poisonous tree.

{¶48} The state argues that it was reasonable for officers to believe that Helman and Appellant mutually had custody and control of the purse because it was "wide open" on the center console, suggesting that both had access to it and its contents. The state also relies heavily on the fact that Appellant left her purse inside of the vehicle when she was ordered out, despite the fact that officers did not order her to leave it behind.

{¶49} Again, this search of Helman's vehicle was not supported under the automobile exception to the warrant requirement, as officers had no probable cause to believe criminal activity beyond the minor traffic infraction was taking place. Hence, the search of the purse can only be justified under the consent exception. Under Ohio law, the search of a purse must be conducted pursuant to a warrant, unless an exception to the warrant requirement applies. *State v. Withrow,* 2022-Ohio-2850 (7th Dist.), citing *State v. Banks-Harvey,* 2018-Ohio-201. The state contends that Helman's consent to search his truck permitted a search of Appellant's purse because it was located on the center console, between she and Helman. Interestingly, the only case the trial court cited in its entry that addressed consent held that "[s]ince all are in agreement that the driver's consent did not extend to a search of the passenger's purse, we see little point in further discussing that issue." *State v. Raslovsky*, 2020-Ohio-515, ¶ 11 (2d Dist.). The court in *Raslovsky* ultimately held that the automobile exception to the warrant requirement applied because a K9 sniff resulted in an alert, thus giving officers probable cause to search both the vehicle and contents. *Id.* at ¶ 14.

{¶50} Contrary to the state's assertions, the fact that Appellant left her purse inside the vehicle does not affect the analysis. Under Ohio law, where *the driver* of the vehicle leaves a bag or purse inside a vehicle, officers may search it. However, the result

is different where *the passenger* leaves a purse inside the vehicle. Appellant cites to a case arising out of the Ohio Supreme Court holding that a driver lacked the authority to consent to a search of the passenger's purse. See *State v. Caulfield,* 2013-Ohio-3029. The Second District aptly explained the law as it pertains to third-party consent in *Caulfield*:

> Proper consent can be given by a third party, but the third-party must possess "common authority over the area sought to be searched." *State v. Miller*, 117 Ohio App.3d 750, 759, 691 N.E.2d 703 (11th Dist.1997), citing *United States v. Matlock*, 415 U.S. 164, 172, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). (Other citation omitted.) "Common authority rests 'on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.' " *State v. Pugh*, 2d Dist. Montgomery No. 25223, 2013-Ohio-1238, ¶ 9, citing *Matlock* at 172, fn. 7. "[T]he United States Supreme Court has applied a 'reasonable belief' standard for determining whether a police officer's reliance upon the consent of a third party was proper under particular circumstances." *Miller* at 759, 691 N.E.2d 703. "That is, before a trial court can conclude that a warrantless search was valid on the basis of a third-party consent, it must find that the facts of the case supported a reasonable belief on the part of the police officer that the

third party had the authority to consent to the search."  *Id*. at 759-760, 691 N.E.2d 703.

*Id.* at ¶ 23.

{¶51}  *Caulfield* makes it clear that the facts of the case must clearly demonstrate that the third party who provided consent had "mutual use" and "joint authority" to consent to a search of property not owned by him or her.  Although the general law is addressed in depth, discussion pertaining to the factual application of the law regarding consent is sparse.  There are facts that distinguish the instant case from *Caulfield,* including that the passenger of the vehicle in *Caulfield* knew the driver had consented to a search of the vehicle and one of the officers in *Caulfield* had ordered her to leave her purse inside the vehicle.  *Id.* at ¶ 6.  It is clear from this record Appellant did not know Helman had consented to a search of his vehicle.  While Sgt. Young did not instruct Appellant to leave her purse, it appears that the purse could not have been seen by Sgt. Young based on his vantage point when he ordered her from the car, so he had no reason to tell her to leave an item he was unaware was in the vehicle.  We note that, as Appellant was holding items in both hands when ordered out of the truck and appeared startled and surprised by the order, it is unsurprising she did not think to gather her belongings.

{¶52}  Although not cited by the parties, a case arising out of the Ninth District is factually similar, *State v. Chojnowski,* 2015-Ohio-1405 (9th Dist.).  In that case, officers approached a vehicle in a parking lot based on suspicions of prostitution.  After dispelling their concerns as to their stated investigation, and without additional evidence any other criminal offense was occurring, officers sought and obtained consent to search the

vehicle. The appellant passenger voluntarily left her purse partially opened inside the vehicle. *Id.* at ¶ 6.

{¶53} Officers searched the purse and discovered contraband. On appeal, the appellant argued that the owner of the vehicle could not consent to a search of a passenger's purse. The Ninth District agreed, first noting that there was no question that officers lacked probable cause on which to search based on the automobile exception to the warrant requirement. *Id.* at ¶ 7. As to consent, the Court focused on whether the driver had "common authority" over the purse. Finding no facts of record to suggest common authority, the court determined that the fact that the purse was left inside the vehicle and that it was open was irrelevant. *Id.* at ¶ 11-12. The only distinguishing fact between *Chojnowski* and the instant case is that the *Chojnowski* appellant had held the purse on her lap at some point before the search.

{¶54} The question, here, becomes whether Helman's consent applied to Appellant's purse. In order for Helman's consent to search his truck to apply to Appellant's purse, the state must show the facts demonstrate that he had "common authority" over the purse. The state would need to cite to facts in the record suggesting that Helman had dominion and control over the purse or was in a position where it was likely he had accessed the contents of the purse.

{¶55} In reviewing whether Sgt. Young possessed a reasonable belief that Helman had common authority over Appellant's purse, we first note that the state's argument relies on a misrepresentation of the nature and location of Appellant's purse. The state claims that the purse sat open, directly in between Appellant and Helman in a manner where each of them could have at any time reached into the purse to retrieve

items. While a review of the body camera video confirms that the purse sat on the center console, the state neglects to accurately describe the center console area of this vehicle.

**{¶56}** As earlier discussed, Helman's truck did not have a backseat. There are two seats in the cab, which is then attached to the bed. There is no designated storage area behind the driver's and passenger's seats. The center console extends from the area between the driver/passenger seats to the back of the cab, touching the back window that separates it from the bed. The distance between the seats and the back window amounts to no more than a few inches. However, the console is raised significantly higher than the seats for its entire length, and is very wide. Appellant's purse was turned sideways and pushed as far back as possible against the back window. It was not placed in a manner to allow either occupant sufficiently easy access to reach in and retrieve items from it. Instead, it was placed as far out of the front seat area as possible.

**{¶57}** Appellant's purse does not sit directly between Appellant and Helman. Either person was required to reach behind and over the edge of their seat to reach Appellant's purse. Because the console was raised, they would also be forced to reach up, as the top of the console may have been at shoulder height, and so the top of the bag was approximately chin height for the average person. Additionally, a medium to large sized red plastic convenience store bag sat in front of the purse on the center console. This plastic bag was positioned almost directly between Appellant and Helman, further obstructing access to the purse. While the purse appears not to have been mutually accessible, the plastic bag could have been accessed by both Helman and Appellant.

**{¶58}** Appellant's purse was "open" in the technical sense. Apparently, it may not have a zipper or other closing mechanism, based on the video evidence. However,

apparently to correct this, full sheets of paper had been laid on top of the purse covering its opening. The papers had been laid between the two purse straps, which then secured the papers in place and effectively secured the purse closed. Neither Helman nor Appellant would have been able to simply reach into the purse even if it was accessible from their positions. In order to access the contents of the purse, someone seeking access was required to remove these papers before reaching inside. This placement of the papers was clearly deliberate, and meant to act as a secure closure for the purse. Hence, it appears from this record that the purse was not within the custody and control of Helman and was not easily accessed, nor could its contents be readily viewed.

{¶59} The state makes much of the fact that Appellant left her purse inside the vehicle when she exited, essentially claiming it was thus "fair game" in a search of the truck. Again, Appellant sat inside the truck while officers spoke to Helman outside and behind the truck. Appellant was completely unaware of their conversation and did not know that Helman had consented to a search of his truck, and her surprise at being ordered out of the vehicle is readily apparent from the video evidence.

{¶60} In fact, Appellant was in the midst of a conversation on her cell phone at the time Sgt. Young approached her, opened the door and told her to "step out real quick." (Exh. 1, 14:55.) She appeared confused and asked him if everything was ok. Sgt. Young replied "yes," and that he would give her an explanation for his action "in a second." (Exh. 1, 15:19.) She exited the vehicle with the phone in one hand, still actively engaged in her call, and a lit cigarette in the other hand that she placed in her mouth so that her hand was free to aid in her exit. Even assuming Appellant spared a thought for her purse, which was outside of her line of vision, she could not have readily picked it up.

Significantly, there is no evidence whatsoever that she knew a search had been authorized or was about to take place before she exited the truck. Although Sgt. Young informed her that he would explain everything "in a second," he did not. Instead, he left her with Helman and the other officer and returned to the truck to begin his search.

{¶61} Based on the facts in this case, there is nothing to suggest that Helman had common authority or control over Appellant's purse. Her purse was not "open" so that occupants of the vehicle could simply reach in and retrieve any of its contents. In fact, it was placed out of convenient reach of both occupants. Again, as in *Chojnowski,* whether Appellant voluntarily left her purse when she was ordered out of the vehicle is irrelevant where there are no facts to support the reasonable belief that both occupants had common authority over it. Further, the covering over the purse meant that persons encountering it could not simply view its contents, and it is undisputed no contraband was in plain view. Based on the totality of the facts in this case, Helman's consent to search his truck did not extend to the search of Appellant's purse. Since no warrant was obtained, the search was invalid and any evidence obtained should have been suppressed.

{¶62} Turning to the question of whether the contraband found on Appellant's person after her purse was searched and statements she made following the warrantless search were inadmissible as fruit of the poisonous tree:

> The exclusionary rule requires suppression of evidence obtained as a result of an unlawful search and derivative evidence that is the product of the primary evidence or is otherwise acquired as an indirect result of the unlawful search, unless the connection with the unlawful search is so

attenuated that the taint is dissipated. *Murray v. United States*, 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). The question is whether the taint is sufficiently dissipated or whether the evidence is the fruit of the poisonous tree. *Segura v. United States*, 468 U.S. 796, 804-805, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

*State v. Nickelson*, 2017-Ohio-7503, ¶ 27 (7th Dist.).

**{¶63}** While officers would have been permitted to frisk Appellant for the purpose of officer safety upon her exit from the vehicle, apparently they did not, and officers would not have been permitted to search her for contraband. It is clear from the body camera video evidence that the contraband found on Appellant's person was found in a more extensive search conducted because Sgt. Young found drugs in her purse. The search of her person was only conducted as a direct result of this discovery. Likewise, the questioning of Appellant regarding contraband found in the illegal searches elicited incriminating statements. Neither the questions nor the statements would have taken place but for the illegal search. Because Helman's consent did not extend to validate the search of Appellant's purse, any evidence obtained in or after that improper search was inadmissible as fruit of the poisonous tree. Accordingly, Appellant's first, second, and third assignments of error have merit and are sustained.

### Conclusion

**{¶64}** Appellant contends that neither she nor her codefendant exhibited behavior that would lead police officers to possess probable cause they were engaging in criminal activity. Regardless, she argues that her boyfriend's act of consenting to a search of his vehicle should not have extended to include a search of her purse. For the reasons

provided, Appellant's arguments have merit. The judgment of the trial court is reversed and this matter is remanded to allow the state to determine if it can proceed without evidence obtained from the search of Appellant's purse, her person, or any statements she made after the search of her purse.

Robb, J. concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is reversed. This matter is remanded to allow the state to determine if it can proceed without evidence obtained from the search of Appellant's purse, her person, or any statements she made after the search of her purse. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**